## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KILN UNDERWRITING LTD., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:**   **06-04350 c/w** |
| | **06-05060,** |
| | **06-05057** |
| **JESUIT HIGH SCHOOL OF NEW ORLEANS** | **SECTION: "T" (4)** |

### ORDER

Before the Court is a **Motion for Protective Order Extending Time for Responding to Subpoenas Duces Tecum, or Alternatively, Motion to Quash Notices to Take Depositions and Subpoena Duces Tecum (R. Doc. 43)** filed by the Plaintiffs' counsel.  In the motion, the Plaintiffs seek an order from this Court extending the time for them to respond to the Defendant's subpoenas or to quash the subpoenas. In opposition, the Defendant, Jesuit High School of New Orleans, filed an Opposition of Jesuit High School to Kiln Underwriting Limited's Motion for Protective Order/Extension of Time (R. Doc. 48). The Defendant subsequently filed a Supplemental Opposition to Motion for Protective Order/Motion to Quash (R. Doc. 54).

The motion was heard with oral argument on December 12, 2007.  At the hearing, the parties informed the Court that the parties resolved the motion in part, and only remaining issue pertained to the privileged nature of the materials requested in the *subpoenas duces tecum*.  During the hearing, the Defendants provided the Court with their privilege logs and the contested documents

for the Court's *in camera* review.

## I.    Background

The Defendant, a parochial high school located in New Orleans, Louisiana, purchased institutional property insurance from the Plaintiffs for the period of November 1, 2004 to November 1, 2005.  (R. Doc. 3.)  The insurance coverage included business interruption coverage for the Defendant's facilities located (1) on 4133 Banks Street, New Orleans, Louisiana, and (2) in Pass Christian, Mississippi.  (R. Doc. 3.)  According to the Plaintiffs, the insurance policy contains various provisions relating to flooding, including limits on recovery for flood damage.  (R. Doc. 3.)

The Defendant's properties were damaged on or about August 29, 2005, by the effects of Hurricane Katrina.  (R. Doc. 3.)  Consequently, the Defendant sought to recover insurance proceeds from the Plaintiffs.  (R. Doc. 3.)  After the Plaintiffs wire-transferred a payment of $250,000.00 to the Defendant, the Defendant provided an unsworn partial proof of claim to their insurance agent, claiming that their facilities sustained damages in excess of $13,000,000.00.  (R. Doc. 3.)  The Defendant claims that the water damage to its facilities was not caused by flooding and thus not subject to the flood limits in the policy.  (R. Doc. 3.)  However, the Plaintiffs allege that the Defendant has yet to provide them with a signed and sworn proof of loss as required under the policy.  (R. Doc. 3.)  Both of the parties dispute the nature and extent of the coverage available. (R. Doc. 3.)

The Plaintiffs have retained Dr. Marc L. Levitan[1] ("Levitan"), Ivor Van Heerden[2] ("Van

---

[1] Dr. Levitan is the Director of the Louisiana State University Hurricane Center.

[2] Van Heerden is the President of Agulhas Ventures, Inc. and was retained to provide expert engineering services to the Plaintiffs.

Heerden"), William R. Kinsey ("Kinsey"), and Russell J. "Joey" Coco, Jr.[3] ("Coco") as experts to testify in the lawsuit.  (R. Doc. 43-4, p. 4.)  On October 24, 2007, the Defendant noticed three records depositions of Custard Insurance Adjusters, Inc. ("Custard"), the adjuster in this matter, to occur in (1) Duluth, Georgia and (2) New Orleans, Louisiana.  (R. Doc. 43-9, Ex. B.)  The subpoenas were directed towards Custard's offices in Duluth, Georgia; Norcross, Georgia; and Mandeville, Louisiana.  Analogously, on October 25 and 26, 2007, it noticed depositions of (1) Levitan, (2) Van Heerden, and (3) Coco, to occur in Baton Rouge, Louisiana and of (4) Kinsey, to occur in Duluth, Georgia.

Thereafter, the Plaintiffs telephoned counsel for the Defendant, requesting that the Defendant agree to an extension of time for them to respond to the *subpoena duces tecum*.  (R. Doc. 43-4, p. 3.) However, the Defendant allegedly refused to informally resolve the discovery dispute or to grant an extension[4].  (R. Doc. 43-4, p. 3.)  The Plaintiffs argue that they have been working to collect the requested information and Custard has already produced copies of the initial adjuster's reports. Accordingly, the Plaintiffs brought the subject motion, (1) for an extension of time to respond to the subpoenas, or alternatively, (2) for a protective order and to quash the subpoenas.  In opposition, the Defendant argues that the documents requested by the subpoena are discoverable and that it has not refused to confer with the Plaintiffs.  However, at trial, the parties informed the Court that the only issue that remains pertains to whether the requested materials are protected or privileged from discovery.  Particularly, whether the communications are protected by the attorney client privilege,

---

[3] Coco is a Physical Engineer employed with Engensus Engineering and Consulting ("Engensus"), an engineering firm.

[4] The Plaintiffs indicated in their motion that their Exhibit A corroborated their assertions, but failed to attach an Exhibit A to their motion.

work product doctrine or both.

On January 4, 2008, the law clerk to the undersigned magistrate judge initiated a telephone conference call with the parties.  The purpose of the telephone conference was to clarify the nature of the relationships between the Plaintiffs, counsel for the Plaintiffs, and the subpoenaed experts. Jose Cot ("Cot") participated on behalf of the Plaintiffs, Anthony M. Williams ("Williams") participated on behalf of the Defendant, and Thomas M. Richard participated on behalf of the Consol Defendant.  During the phone call, the Court inquired into (1) the entity(ies) or person(s) that retained Cot's firm in the matter, (2) the date Cot's firm was retained, (3) the entity(ies) or person(s) that retained Levitan, Van Heerden, Kinsey, Coco, and Custard, and (4) the dates were the experts retained.

During the telephone conference, Cot informed the Court that his firm was retained by the Plaintiff, Kiln Underwriting Limited.  As to the date Cot's firm was retained, Williams drew the Court's attention to page 9 of document 66 in the record.  On the identified page, the Plaintiffs indicated that they retained counsel on March 1, 2006.  (R. Doc. 66, p. 9.)  Cot further informed the Court that Custard was involved in the adjusting of the subject insurance claim prior to his law firm's involvement in the matter.

Shortly thereafter, Cot submitted a follow-up facsimile to the Court, on January 4, 2008.  In the facsimile, Cot clarified that "William R. Kinsey (The Vail Consulting Co., Inc.) was initially retained in this matter by Mr. Martin Johnson of Custard Insurance Adjusters, Inc., on behalf of Kiln Underwriting Limited, on March, 2006."  Additionally, Cot indicated that "Messrs. Russell J. 'Joey' Coco, Jr. and Mark L. Levitan (Engensus), and Ivor van Heerden, Ph.D. (Agulhas Ventures, Inc.) were retained by our firm, on behalf of Kiln Underwriting Limited, on August 17, 2006."

4

A copy of the facsimile was separately filed in the record.  In this case, the Plaintiffs have submitted four binders of communications which they contend are protected either by the attorney-client privilege, the work product doctrine, or both.  The four binders contain (1) documents from Van Heerden, (2) documents from Custard, (3) documents from Kinsey of Vail Consulting Co., (4) documents from Coco, Levitan and Engensus, engineers retained to assist the Plaintiffs in determining the cause of the damage to Jesuit High School.

## II.   Standards of Review

### A.   Rule 26

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

### B.   Attorney-Client Privilege

Before addressing the applicability of which documents are protected by the attorney-client privilege, consideration must be given regarding whether federal or state law of attorney-client privilege applies.  In a diversity action such as this, the Court must apply the state law of attorney-client privilege.  Fed. R. Evid. 501.

Louisiana attorney-client privilege law is codified at Louisiana Civil Code of Evidence

Article 506(B).  It provides that a client has the privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client.   La. Code of Evid. Art. 506(B).  A "confidential communication" is not intended to be disclosed to anyone other than "[t]hose whom disclosure is made in furtherance of obtaining or rendering professional legal services for the client."  La. Code of Evid. Art. 506(A)(5)(a).

In Louisiana, communications that fall into one of four categories may be protected by the attorney-client privilege.  Communications made between a client and/or a representative of the client and/or counsel and/or a representative of the lawyer may constitute privileged attorney-client communications. La. Code of Evid. Art. 506(B).  A "representative  of the client" is defined as (1) a person with the "authority  to obtain professional legal services, or to act on advice so obtained, on behalf of the client," or (2) a person "who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client."  La. Code of Evid. Art. 506(A)(2).

A "representative of the lawyer," is defined as "a person engaged by the lawyer to assist the lawyer in the lawyer's rendition of professional legal services."  La. Code of Evid. Art. 506(A)(2)(4). Such representatives must be "considered to be so interrelated with the rendition of legal services by the attorney that communications to them are considered within the privilege." 1992 Comments (e) to La. Code of Evid. Art. 506.  However, information that the lawyer acquired "by reason of . . . being legal adviser" is not within the privilege.  1992 Comments (i) to La. Code of Evid. Art. 506.  A "representative of the lawyer" "is not merely one from whom the attorney requests information," but instead, must possess "a more direct and substantial relationship with the

6

rendition of legal services." *Hoerner v. Anco Insulations, Inc*., 729 So.2d 640, 645 (La. App. 4 Cir.

1999).

   **B.**   **Work Product Protection**

   While state law applies to considerations of attorney-client privilege in this diversity case,

considerations of the work product doctrine are governed by federal law. *Dunn v. State Farm Fire*

*& Casualty Co.*, 927 F.2d 869, 875 (5th  Cir. 1991).  The work-product doctrine is "distinct from

and broader than the attorney-client privilege." *U.S. v. Nobles*, 422 U.S. 225, 238 n. 11 (1975).  Rule

26(b)(3) protects against the discovery of "work product," defined as documents and tangible things

that have been prepared in anticipation of litigation or for trial by or for a party or a party's

representative, including the party's consultant.  The burden of demonstrating applicability of work

product protections rests on the party invoking it. *Hodges, Grant & Kaufmann v. U.S. Government,*

*Dept. of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985).

   A court must initially determine whether the documents were prepared in anticipation of

litigation; the mere fact that litigation eventually ensues does not, alone, protect all documents

related to the subject matter of the litigation. *Binks Mfg. Co. v. National Presto Indus. Inc*., 709 F.2d

1109 (7th Cir.1983). A document is only considered work product if it is primarily concerned with

legal assistance. *Loctite Corp. v. Fel-Pro, Inc*., 667 F.2d 577, 582 (7th Cir. 1981).  Furthermore,

work product protections only apply to materials prepared in anticipation of litigation which set

"forth the attorney's theory of the case and [its] litigation strategy." *Nat'l Labor Relations Bd. v.*

*Sears, Roebuck & Co*., 421 U.S. 132, 154 (1975).

   Rule 26(b)(3) regulates the scope of the allowable discovery of attorney work product and

instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions,

7

or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. Fed. R. Civ. P. 26(b)(3). The "work-product rule accords special protection to work product revealing the attorney's mental processes." *Herwig v. Marine Shale Processors, Inc.*, Civ. A. No. 92-2753, 1994 WL 10156 (E.D. La. Jan. 11, 1994). Having set forth the applicable standards to be utilized herein, the Court will proceed with its review.

## III.   Analysis

### A.   Attorney-Client Privilege

#### 1.   Communications of Custard, Generally

Custard is an adjusting company that provided services to the Plaintiff, Kiln Underwriting ("Kiln"). Therefore, under Louisiana attorney-client privilege law, Custard's communications would be protected only if it qualified as a representative of Kiln. Custard would be a representative of Kiln if it had the authority to procure professional legal services, or to act on advice so obtained on behalf of the client, or if it made or received a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client. La. Code of Evid. Art. 506(A)(2)(a).

There is no evidence in the record that confirms or establishes that Custard has the authority to obtain professional legal services or to act on legal advice so obtained on behalf of the Plaintiffs. *See* La. Code of Evid. Art. 506(A)(2)(a). The burden to establish that communications are subject

to attorney-client privilege lies with the Plaintiffs, the party asserting the privilege.  *Hodges, Grant & Kaufmann v. U.S. Gov.*, 768 F.2d 719, 721 (5th Cir. 1985). Therefore, the Plaintiffs have failed to establish that Custard is a representative under the first prong, such that its communications are subject to protection under Louisiana's attorney-client privilege.

Alternatively, Custard's communications could be subject to attorney-client privilege if Custard is an entity "who makes or receives a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client." La. Code of Evid. Art. 506(A)(2)(b).  Again, there is no evidence either in the memorandum submitted to the Court or the documents themselves that indicates that a representative of Custard had the authority to retain counsel for Kiln or even that the communications involved such efforts. Therefore, the contents of the binder containing Custard's communications are not subject to protection under attorney-client privilege because the Plaintiffs failed to meet their burden of proof. Consequently, the following documents which the Plaintiffs only asserted protection by virtue of the attorney-client privilege, bearing bates numbers 0010 to 0014, are subject to production.  While the remainder of the documents contained in the Custard binder are not protected by attorney-client privilege, they require further consideration as the Plaintiffs also assert protection pursuant to the work product doctrine, which will be addressed later on in this opinion.

### 2.        Custard's Communications to Kinsey

The Plaintiffs also seek to withhold certain documents either authored or received by Kinsey, an engineer employed with the Vail Consulting Co.  These documents include bates pages 0394 to 0399, 0400 to 0401, 0407 to 0430, and 0440 to 0442.  The supplemental information provided by counsel confirms that Kinsey was retained by Custard in the matter.  The adjuster's retention of an

engineer to assist it with determining the cause of damage to Jesuit High School is not subject to attorney-client privilege, as clearly no attorney was involved in the retention.  Therefore, these documents are not entitled to protection by virtue of the attorney client privilege.  However, this does not end the inquiry because the Plaintiffs have also asserted the application of the work product doctrine as to these documents.

### 3.    Communications to Coco, Levitan, and Van Heerden.

In the supplemental facsimile sent on January 4, 2008, counsel for the Plaintiffs informed the Court that Coco,  Levitan of Engensus, and Van Heerden of Agulhas Ventures, Inc. were retained by their law firm on behalf of their client, Kiln on August 17, 2006.  In Louisiana, these experts would be classified as "representatives of the lawyer"  if they were "engaged by the lawyer to assist the lawyer in the rendition of professional legal services."   La. Code of Evid. Art. 506(A)(2)(4).  To determine if their communications are subject to the attorney-client privilege doctrine, the mover must show a (1) direct and (2) substantial relationship between the experts and the rendering of legal services.  *See Hoerner*, 729 So.2d at 645.  Additionally, there must be proof that they engaged and employed the experts, rather than merely using them.  *See Hoerner*, 729 So.2d at 645.

*Hoerner v. Anco Insulation, Inc.* is the only authoritative Louisiana case interpreting the definition of "representative of the lawyer."  *Id*.  In *Hoerner*, the defendant attempted to subpoena medical reports prepared by the plaintiff's physician that were directed to the plaintiff's counsel. *Id*. at 641.  However, the plaintiff asserted attorney-client privilege suggesting that the reports should not be subject to discovery.  *Id*.

In ordering production of the documentation, the court in *Hoerner* emphasized that the expert

physicians independently treated the plaintiff before suit was filed and that the plaintiffs failed

provide sufficient evidence relating their experts with the rendering of legal services.  *Id*. at 642.

The court held that the plaintiffs did not "specifically claim that the subpoenaed physicians were

'engaged' or employed by counsel to assist in the rendition of legal services," rather, the physicians

were simply 'used by' counsel to provide reports for the rendition of legal services.  *Id*. at 645.

Accordingly, the court concluded that the physicians reports were not privileged because the

plaintiff did not show a direct and substantial relationship between the physicians and the rendering

of legal services.  *Id*.

In this case, the Plaintiffs retained Coco, Levitan, and Van Heerden on August 17, 2006, a

significant time after suit was initiated and after they retained counsel on March 1, 2006.  These

experts did not independently work with the Plaintiffs before the filing of suit, but rather were

retained specifically for expert services in connection with the case.  The Court therefore finds that

they have a direct and substantial relationship in the rendering of legal services because they were

hired to assist with determining the cause of damage to the Defendant's  property.  Consequently,

the communications  of  and between with these experts may be subject to attorney-client privilege

as addressed in section 2(a) of this opinion.

    **B.**    <u>**Work Product Doctrine**</u>

        **1.**    <u>**Custard Binder**</u>

            **a.**    <u>**Email Correspondence from Custard to the Plaintiffs' Counsel**</u>

In addition to the assertion of privilege, the Plaintiffs also assert that (1) email

correspondence between Custard and counsel for the Plaintiffs on October 30, 2007, (2) automated

service of process transmittal forms, (3)  and a letter from Custard to Plaintiffs' counsel are protected

by the work product doctrine.  (Bates Nos. 0007-0009.)  However, a review of the documents confirm that they are not protected by the work product doctrine because they are actually written by William Douglas Turner of Custard to Michael McGlone, counsel for the Defendant in this proceeding.  Consequently, bates-numbered documents 0007 to 0009 are subject to production.

### b.      Custard's In-House File Activity Sheets, Invoices, Time Sheets, Confirmation Receipts, and Other Financial Reports

Also in Custard's binder are various financial documents, time sheets, activity sheets, invoices, facsimile transmission sheets, and shipping labels which the plaintiff contends are protected by the work product doctrine.  (Bates  Nos. 0015-0050, 0063-0064, 0066-0069, 0077, 0121, 0130-0131, 0149-0150, 0157, 0168-0170, 0173.)

The file activity sheets, which contain notes for billing purposes, are not subject to the work product doctrine as they do not contain any information on legal strategy.  Therefore the documents bearing bates numbers 0015-0017, 0027, 0030, 0042-0043, 0045, 0050 are subject to production.

Also, Custard's binder contains invoices by JLT Insurance Services, which detail expenses incurred in assisting with the claim asserted by the Defendant.  These documents also do not contain any strategy, but rather contain a mere listing of expenses which were submitted for payment.  Therefore, these documents are not subject to work product protection.  (Bates Nos. 0018-0026, 0031-0041, 0044, 0046-0049, 0063-0067, 0130-0131, 0132.)

Also contained in Custard's binder are facsimile sheets showing that documents were sent.  However there is no indication of the nature or content of the documents that were sent.  Clearly, these documents could not contain any strategy to be protected by the work product doctrine.  Consequently, documents bearing bates numbers  0028 to 0029, 0068 to 0069, 0091, 0117, 0121,

0136, 0149 to 0150, 0157, 0168 to 0170, and 0173 are subject to production.

        **c.**        **Letters, Email Correspondence, and Handwritten Notes**

Also contained in Custard's binder are various letters between Custard, its employees, and attorneys for the Plaintiff, including email and facsimile correspondence and handwritten notes. (Bates Nos. 51-57, 60-62, 70-71, 74-76, 78-102, 104-120, 122-129, 132-138, 140-142, 145-148, 153 -156, 158-167, 174-193.) The Plaintiffs contend that these documents are protected as a result of the work product doctrine.

In several documents, (1) the trial date is communicated to the adjusters via counsel for the Plaintiffs, (2) it is verified that counsel for the Plaintiffs was communicating directly with Kiln, (3) a report is requested regarding progress made by counsel for the Plaintiffs with the insured's counsel, and (4) additional claim items are requested. Other documents reference the transmittal of photographs, enclose a copy of correspondence from the Defendant's counsel, and note problems with email transmission. These documents do not contain any strategy and are therefore subject to production. (Bates Nos. 0051-0056, 0078-0079, 0080-0081, 0120, 0135).

The binder also contains emails indicating the attempts to schedule the inspection of Jesuit High School's properties, requests for payment of services, notes regarding the identity of people involved in the matter, and the position of the insured. These documents again do not contain any strategic information. There are also other emails in the Custard file, photographs of damage, and a copy of a overnight slip–presumably of the Custard file–and request for an unrelated file. The Court concludes that these documents are not subject to work product protection. (Bates Nos. 0060-0062, 0075-0077, 0084-0091, 0094-0100, 0101-0102, 0106-0113, 0134, 0152, 0154-0155, 0156, 0162-0165, 0166-0167, 0172.)

The binder also contains emails that do speak of strategy, recommendations, and opinions shared between the experts, counsel for the Plaintiffs, and the adjuster, as well as notes and letters regarding opinions as to the cause of damage.  These documents are therefore protected by the work product doctrine; namely such documents include bates numbered pages 0070 to 0073, 0057 to 0059, 0092 to 0093, 0114 to 0116, 0122 to 0123, 0137 to 0145, 0151, 0153, 0158 to 0161, 0171, and 0176 to 0183.

Additionally there are handwritten notes and emails that contain general information which do not define any strategy.  These documents seem to contain notes of observations made during the property inspection.  These documents are subject to production as they are not protected by the work product doctrine.  (Bates Nos. 0074, 0082-0083, 0103, 0104-0105, 0118-0119, 0124-0129, 0133, 0146-0148, 0174-0175, 0184-0193.)

      2.      **Van Heerden Binder**

          a.      **Email Correspondence Between Levitan, Coco, Van Heerden, and Plaintiffs' Counsel**

Next, the Plaintiffs contend that certain emails and correspondence are subject to work product protection or attorney-client privilege.  (Bates Nos. 0201-0205, 0208-0251, and 0269-0301.)  Many of the subject emails pertain to scheduling matters and reference factual information, but do not reveal legal strategy or refer to a legal opinion being sought.  These emails are not protected by the work product doctrine nor are they subject to the attorney client privilege.  (Bates Nos. 0201-0205, 0208-0211, 0214-0245, 0247, 0252-0269, 0271-0275, 0277-0283, 0286-0289, 0291-0391.)

There are emails, however, that discuss strategy or present questions which connote strategy such that they are protected by the work product doctrine.  The following documents are protected by the work product doctrine; bates numbered pages 0206-0207, 0212-0213, 0246, 0248 to 0251,

0270, 0276, 0284 to 0285, and 0290.

### 3.      Kinsey Binder

Correspondence, handwritten notes and emails by Kinsey to counsel for Plaintiffs are purportedly protected by the work product doctrine. (Bates Nos. 0394-0395, 0401-0448.)  However the documents merely reflect scheduling, enclose correspondence from the Defendants' counsel, constitute facsimile transmittal sheets indicating the quantity of information faxed, and comprise of invoices for travel expenses and professional services rendered.   The handwritten notes appear to be more on the lines of a "things to do" list and other travel reservation documents within Kinsey's folder similarly do not convey strategy.   Additionally, most of the emails reference the scheduling of an inspection of the insured property. Consequently, none of the documents containing the information referenced above are protected by the work product doctrine and are therefore subject to disclosure.  (Bates Nos. 0394-0426, 0428-0430, 0433-0440, 0441-0448.)

There are emails and some handwritten notes however that contain an exchange of strategy and as such, are protected from disclosure.  (Bates Nos. 0427, 0431, 0432.)

### 4.      Coco, Levitan, and Engensus Binder

The final binder purportedly contains information subject to the work product doctrine. Specifically, the Plaintiffs contend that letters, facsimiles, invoices, hypothetical models, HEC-RAS considerations, satellite photographs, handwritten notes, and emails are protected from disclosure as a result of the work product doctrine.

There are several items of correspondence which the Plaintiffs contend are protected from disclosure as a result of the work product doctrine.  However, the correspondence merely references the enclosure of other items and delineates items not included, pending the formulation of a final

report.  Other correspondence simply details scheduling matters or factual observations from third

parties, acknowledges the payment of services rendered, and are invoices for outstanding services.

Other documents include HEC-HMS models; Power Point slides, which presumably contain

hurricane-related information; hypothetical models of the effects of the hurricane in the East Bank

of Orleans and St. Bernard Parishes; excerpts of the preliminary report of the United States Army

Corps of Engineers; and preliminary forensics analyses of the Defendant's claim.  Additionally,

there is correspondence from opposing counsel, over which the Plaintiffs asserted work product

protection.  All of these documents are not protected work product, as they are either generated by

other entities and not by the Plaintiffs or their experts or because the documents merely contain facts

and not legal strategy.  (Bates Nos. 0524, 0529-0530, 0532-0533, 0535, 0543, 0569-0578, 0580-

0601, 0602-0627, 0628-0641.)

This binder also contains several facsimile cover sheets referencing the number of pages

transmitted and summaries of unpaid invoices for services rendered.  These documents do not

contain any strategy and therefore are not protected from disclosure via the work product doctrine.

 (Bates Nos. 0525, 0528, 0534, 0559-0568.)

However, there is correspondence that does provide strategic information or contains the

mental impressions of counsel for the Plaintiffs.  These documents were transmitted by counsel for

the Plaintiffs to the experts that he retained to assist him with providing legal services to his client

or comments and observations made by the expert.  Additionally, this set of documents contain

monthly action plans prepared by Engensus which contain strategies for assisting the client in

determining the cause of damage.   These documents are therefore protected under the work product

doctrine.  (Bates Nos. 0526-0527, 0531, 0535-0542, 0544-0558, 0579, 0644, 0681, 0697-0698,

0705, 0709, 0712-0714, 0717, 0722, 0725-0726, 0732, 0761-0762, 0780-0781, 0795, 0797-0799,

0811-0820, 0822, 0831, 0851-0853, 0860, 0904.)

  Additionally there are email communications between counsel and the experts which contain

no strategic information but simply exchange pleasantries or basic contact information. (Bates Nos.

0642-0643, 0645-0680, 0684-0696, 0699-0704, 0706-0708, 0710-0711, 0715-0716, 0718-0721,

0723-0724, 0727-0731, 0733-0760, 0763-0779, 0782-0794, 0796, 0800-0810, 0821, 0823, 0824-

0830,0832, 0833-0850,0854-0859, 0861-0903, 0905.)  Therefore, the aforedescribed documents are

subject to production.

**IV. Conclusion**

  Accordingly,

  **IT IS ORDERED** that the Plaintiffs' **Motion for Protective Order Extending Time for Responding to Subpoenas Duces Tecum, or Alternatively, Motion to Quash Notices to Take Depositions and Subpoena Duces Tecum (R. Doc. 43)** is **GRANTED IN PART** and **DENIED IN PART**.

  **IT IS ORDERED** that as to the materials found in **Custard's binder**:

A. The bates numbered documents **0010 to 0014** are not protected by attorney-client privilege, and therefore must be produced to the Defendant in unredacted form no later than 14 days from the signing of this Order.

B. The email correspondence from Custard to the Plaintiffs' counsel on bates numbered pages **0007 to 0009** are not protected by work product doctrine and thus must be produced to the Defendant in unredacted form no later than 14 days from the signing of this Order.

C.     Custard's in-house file activity sheets, invoices, time sheets, confirmation receipts, and other financial materials bate stamped **0015 to 0050, 0063 to 0069, 0091, 0117, 0121, 0130 to 0132, 0136, 0149 to 0150, 0157, 0168 to 0170, and 0173** are not protected work product, therefore must be produced to the Defendant in unredacted form no later than 14 days from the signing of this Order

D.     The letters, email correspondence, and handwritten notes on bates numbered pages **0051 to 0056, 0060 to 0062, 0074 to 0079, 0080 to 0091, 0094 to 0113, 0118 to 0120, 0124 to 0129, 0133 to 0135, 0146 to 0148, 0152, 0154 to 0156, 0162 to 0167, 0172, 0174 to 0175, and 0184 to 0193** are not protected work product, and therefore must be produced in unredacted form no later than 14 days from the signing of this Order

E.     However, the letters, email correspondence and handwritten notes on **0057 to 0059, 0070 to 0073, 0092 to 0093, 0114 to 0116, 0122 to 0123, 0137 to 0145, 0151, 0153, 0158 to 0161, 0171, and 0176 to 0183** are protected work product, and therefore may be withheld.

**IT IS FURTHER ORDERED** that as to the materials found in **Van Heerden's binder**:

A.     The email correspondences exchanged between Levitan, Coco, Van Heerden, and Plaintiff's counsel on bates stamped pages **0201 to 0205, 0208 to 0211, 0214 to 0245, 0247, 0252 to 0269, 0271 to 0275, 0277 to 0283, 0286 to 0289, and 0291 to 0391** are not protected work product and therefore must be produced in unredacted form no later than 14 days from the signing of this Order.

18

B.   The email correspondence exchanged between Levitan, Coco, Van Heerden, and Plaintiff's counsel found at bate numbered pages **0206 to 0207, 0212 to 0213, 0246, 0248 to 0251, 0270, 0276, 0284 to 0285, and 0290** contain protected work product, and therefore may be withheld.

**IT IS FURTHER ORDERED** that as to the documents found in **Kinsey's binder:**

A.   The correspondence, handwritten notes, emails, facsimile transmittal sheets, and invoices bates numbered **0394 to 0426, 0428 to 0430, and 0433 to 0448** do not constitute or contain protected work product.  Therefore, the Plaintiffs must produce these documents to the Defendant no later than 14 days from the date of this Order.

B.   The emails and handwritten notes found at **0427, 0431, and 0432** are protected work product, and therefore, the Plaintiffs may withhold these documents.

**IT IS FURTHER ORDERED** that as to the documents within **Coco, Levitan, and Engensus's binder**:

A.   The models, reports, preliminary analyses, photographs and correspondence found at **0524, 0529 to 0530, 0532 to 0533, 0535, 0543, 0569 to 0578, 0580 to 0601, 0602 to 0627, 0628 to 0641** are not protected  under the work product doctrine and therefore must be produced to the Defendant in unredacted form no later than 14 days from the date of this Order.

B.   The facsimile cover and transmission sheets bate stamped **0525, 0528, 0534, 0559 to 0568** do not constitute protected work product and therefore must be produced to the Defendant in unredacted form no later than 14 days from the date of this Order.

C.     The email communications bates numbered **0642 to 0643, 0645 to 0680, 0684 to 0696, 0699 to 0704, 0706 to 0708, 0710 to 0711, 0715 to 0716, 0718 to 0721, 0723 to 0724, 0727 to 0731, 0733 to 0760, 0763 to 0779, 0782 to 0794, 0796, 0800 to 0810, 0821, 0823, 0824 to 0830, 0832, 0833 to 0850, 0854 to 0859, 0861 to 0903, and 0905** are not protected work product and therefore must be produced to the Defendant in unredacted form no later than 14 days from the date of this Order.

D.     The monthly action plans and notes on bates stamped pages **0526 to 0527, 0531, 0535 to 0542, 0544 to 0558, 0579, 0644, 0681, 0697 to 0698, 0705, 0709, 0712 to 0714, 0717, 0722, 0725 to 0726, 0732, 0761 to 0762, 0780 to 0781, 0795, 0797 to 0799, 0811 to 0820, 0822, 0831, 0851 to 0853, 0860, and 0904** constitute work product and therefore may be withheld from production.

**IT IS FURTHER ORDERED** that the Plaintiffs retrieve their documents from the Court, no later than 7 days from the signing of this Order.

New Orleans, Louisiana, this _9th_ day of January 2008

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**