UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KILN UNDERWRITING LIMITED,<br>INDIVIDUALLY AND AS THE AUTHORIZED<br>REPRESENTATIVE OF CERTAIN<br>UNDERWRITERS AND<br>INSURERS AT LLOYD'S OF LONDON,<br>SEVERALLY SUBSCRIBING TO POLICY<br>NO. 901/LU0435398,<br><div align="center">Plaintiffs</div> | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 06-4350<br> C/W 06-5057 and 06-5060 |
| VERSUS | §<br>§ | SECTION "R"<br><br>MAGISTRATE (4) |
| JESUIT HIGH SCHOOL<br>OF NEW ORLEANS,<br><div align="center">Defendant</div> | §<br>§<br>§ | |

MEMORANDUM IN SUPPORT OF
JESUIT HIGH SCHOOL OF NEW ORLEANS' MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF WHETHER THE INFOLVED
POLICY CONTAINS BUSINESS INTERRUPTION COVERAGES

COMES NOW, Jesuit High School of New Orleans ("Jesuit"), through

undersigned counsel and makes the following representations to this Court.

Kiln Underwriting Limited, Individually and as the Authorized representative of

Certain Underwriters and Insurers at Lloyd's of London, Severally Subscribing to Policy

No. 901/LU0435398 issued the aforementioned policy to Jesuit for the policy year

commencing November 1, 2004 and extending through November 1, 2005. A copy of the 90 page policy and unnumbered page entitled "Schedule of Sublimits – Section A" is attached as Exhibit "1." All premiums charged to Jesuit in connection with the aforementioned policy were timely paid. Jesuit first received a copy of that Policy on October 18, 2005 as per the letter of Christopher Waldorf (Jesuit's broker – attached hereto as Exhibit "2") dated October 18, 2005. See also testimony of Fr. Anthony McGinn, S.J., President of Jesuit, attached as Exhibit "3."

Jesuit contends the above referenced policy clearly and unequivocally provides business interruption coverages. Since Kiln is currently attempting to change the initial allegations made in its Original and First Amended Complaint, both filed in 2006, it is anticipated that Kiln will contend that the policy does not contain such coverages. Thus, the issue is ripe for decision by this Court.

In diversity cases such as this one, it is well settled that federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). The Louisiana Civil Code plainly provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." LSA-CC art. 2045; *See also Cadwallader*, 848 So.2d at 580; *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 763 (La. 1994). An insurance contract must be "construed according to the entirety of its terms and

conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LSA-R.S. §22:654. Interpretation of an insurance contract generally involves a question of law. *Bonin v. Westport Ins. Corp.* 930 So.2d 906, 910 (La. 2006) *citing Robinson v. Heard,* 809 So.2d 943, 945 (La. 2002); *See also La. Ins. Guar. Assoc.*, 630 So.2d at 764.

Further, "[t]he words of a contract must be given their generally prevailing meaning." LSA-CC art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LSA-CC art. 2046. "<u>If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.</u>" (Emphasis added.) *Cadwallader*, 848 So.2d at 580.

Any "[a]mbiguity...must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *La. Ins. Guar. Ass'n,* 630 So.2d at 763.   Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. LSA-CC art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.   LSA-CC art. 2049.   If the policy is susceptible to two or more interpretations, and each of the alternative interpretations is reasonable, then there is an ambiguity which must be construed against the drafter. *Cadwallader,* 848 So.2d at 580. The fact that a term is not defined in the policy itself does not alone make that term ambiguous. *Am. Deposit Ins. Co. v. Myles,* So.2d 1282, 1287 (La. 2001).

If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, in the insurance context, in favor of the insured. *La. Ins. Guar. Ass'n,* 630 So.2d at 764. *See also* LSA-CC art. 2056. Equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Cadwallader,* 848 So.2d at 580. *See also Sher v. Lafayette Ins. Co.*, 2008 WL 928486 (La.).

Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.

> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
>
> If after apply the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Huggins v. Gerry*

4

*Lane Enterprises, Inc.*, 2006-2816 (La. 5/22/07), 957 So.2d
127, 128-9.

When determining whether a policy affords coverage for an incident, the insured

bears the burden of proving the incident falls within the policy's terms. *Miller v.*

*Superior Shipyard and Fabrication, Inc.*, 859 So.2d 159, 2001-2907 (La. App. 1 Cir

8/20/03).

### KILN'S POLICY NO. 901/LU0435398

The **MAIN SCHEDULE** which appears on Page 1 of 90 defines Section A (in

globo) as "all real and personal property (replacement cost value) belonging to the

assured." **The Sum Insured** as to Section A is $24,880,068.00.

**SECTION A DECLARATIONS** which appears on Page 5 of 90 contains the

same limit of liability and specifically defines **SUBLIMITS OF LIABILITY** as

"Earthquake", "Flood", "Property in the Course of Construction…" After each specific

definition appears "As per schedule attached", obviously referring to the Schedule of

Sublimits. Business Interruption is not subject to a scheduled sublimit of liability. The

sublimit section ends with the phrase, "All other sub-limits are attached if applicable."

**SECTION A COVERAGE PART I** refers to **PROPERTY DAMAGE** and

appears on Page 17 of 90. **SECTION A COVERAGE PART II** refers to **BUSINESS**

**INTERRUPTION (GROSS EARNINGS)** and appears on Page 19 of 90. **SECTION A**

consists of five additional sections, none of which are important to the instant motion.

Business Interruption coverage "insures loss resulting from necessary interruption

of business caused by direct physical loss or damage by any of the perils insured by this

Section to property insured by his Section occurring during the Period of insurance."
(Policy Page 19 of 90).

Jesuit High School suffered direct physical loss and damage as the result of water intrusion as well as wind and rain. The classification of the water intrusion is irrelevant inasmuch as the water damages were insured either pursuant to the flood sublimit or pursuant to Section A Coverage Part I. Thus, the triggering event for Business Interruption coverage is the direct physical loss or damage to the insured premises by any of the insured perils.

Kiln will argue that the Schedule of Sublimits contains the verbiage "Not Included" adjacent to "Business Interruption including full payroll" means Business Interruption is excluded from coverage. It is obvious that Business Interruption is not subject to a sublimit since that coverage is provided by Section A which, as stated above, contains $24,880,068.00 of coverages. Business Interruption is not listed as a sublimit of liability under **SECTION A DECLARATIONS SUBLIMITS OF LIABILITY**, Page 5. Finally, the last wording which appears on the Schedule of Sublimits states "The word "Included" wherever used above shall be deemed to read "Included up to the full Limit of Liability." This language is explanatory of the "Not Included" adjacent to "Business Interruption including full payroll." Obviously, Business Interruption is not included as a sublimit since, as stated above, Business Interruption is included as part of the Section A coverages.

The policy itself refers to Section A in globo and is not limited to Section A Coverage Part I. The policy by its clear and unambiguous terms provides $24,880,068.00 of insurances to Section A coverages. Such is in globo.

Contrast Section A with Section B. Section B is broken down into Section B(1), (2), (3), (4), Policy Page 1 of 90. The sum insured as to Section B (Policy Page 1 of 90) contains an individual insurance amount for B(1), (2), (3), and (4), all separate and distinct liabilities as per the policy terms and conditions.

Jesuit contends that extrinsic evidence is inadmissible to prove or disprove coverage.

However, the chronology of events is also of some import. Kiln filed suit against Jesuit on August 16, 2006. Kiln's Original Complaint in Paragraph VII stated "London underwriters issued Jesuit a policy of institutional property insurance including business interruption coverage, …"; that allegation was admitted by Jesuit High School. Kiln's First Amended Complaint was filed on August 23, 2006. Paragraph VII stated "Certain underwriters at Lloyds of London, including Kiln, issued Jesuit a policy of institutional property insurance including business interruption coverage…"; that allegation was admitted by Jesuit High School. Kiln's Statements of Fact in its Original and Amended Complaint for Declaratory Judgment constitute the initial judicial admissions and thereafter a re-affirmation of those judicial admissions..

**Judicial admissions** must be distinguished from ordinary evidentiary **admissions**. A **judicial admission** is binding upon the party making it; it may not be controverted at trial or on appeal. **Judicial admissions** are not evidence at all but rather

have the effect of withdrawing a fact from contention.  Included within this category are **admissions** in the pleadings in the case.  *LCI Shipholdings, Inc., et al v. Muller Weingarten AG, et al*, WL 1638108 (E.D. La.)

A **judicial admission** is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.  Although a **judicial admission** is not itself evidence, it has the effect of withdrawing a fact from contention...A **judicial admission** is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary **admissions**, in contrast, may be controverted or explained by the party.  *Keller v. United States,*  58 F.3d 1194, 1199  n. 8 (7th Cir. 1995) (quoting John William Strong.  *McCormick on Evidence*, §254 at 142 (1992)).  *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (C.A. 5 (La.) 2001).

Jesuit's initial Partial Proof of Claim dated  February 23, 2006 was forwarded to Underwriters.  Such is attached as Exhibit "4." [1]  Accordingly, Kiln has been on notice that Jesuit has and continues to claim damages for Business Interruption coverage.  There have been no payments made to date.

Kiln's Reservation of Rights letter dated  April 16, 2006  was forwarded to the undersigned, attached as Exhibit "5."  Therein Kiln admits the Business Interruption coverage.

It defies reason to think that an underwriter such as Lloyd's would specifically include Business Interruption insurances with sub-parts setting forth definitions,

---

[1] The Proof of Claim is abbreviated to include only the letter and Exhibit 13.

applicable conditions, all of which encompass four typewritten pages only to thereafter exclude same by the mention of the term "Not Included" in an unnumbered page captioned "Schedule of Sublimits." It is obvious that the Schedule of Sublimits applies only to the Section A General Conditions as opposed to Section A Specific Coverages set forth in Coverage Parts I through VII.

In conclusion, it is clear that the unambiguous language contained in the four pages of Section A Coverage Part II entitled, "Business Interruption (Gross Earnings)" provides Jesuit coverages for business interruption. The policy terms and conditions have been met. The insured premise suffered a direct physical loss or damage by an insured peril. Underwriters initially admitted coverage, but not seek to withdraw that admission. Accordingly, Jesuit moves this Court for a finding that the involved policy provides coverages for business interruption. Jesuit acknowledges that a portion of the amount claimed is and has been disputed by Underwriters. However, that dispute should not affect this Court's interpretation of the policy premised upon the policy's own terms and conditions.

Respectfully submitted:

/s/ Michael A. McGlone

**Michael A. McGlone**, Bar #9318
**Anthony M. Williams**, Bar #26750
KEAN, MILLER, HAWTHORNE, D'ARMOND,
MCCOWAN & JARMAN.LLP
LL&E Tower
909 Poydras Street, Suite 1450
New Orleans, LA  70112
Telephone:    (504) 585-3050
Facsimile:     (504) 585-3051
Mike.mcglone@keanmiller.com
Anthony.williams@keanmiller.com
*Attorneys for Jesuit High School of New*
*Orleans*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of May, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known attorneys in this matter who have consented to e-mail notification and electronic service.  If there are any known counsel of record who have **not** consented to e-mail notification and electronic, I hereby certify that I have made service on them via U.S. Mail, postage prepaid, this same date.

_____ /s/ Michael A. McGlone _____