UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KILN UNDERWRITING LIMITED, | § | |
| INDIVIDUALLY AND AS THE AUTHORIZED | § | |
| REPRESENTATIVE OF CERTAIN | § | |
| UNDERWRITERS AND | § | |
| INSURERS AT LLOYD'S OF LONDON, | § | |
| SEVERALLY SUBSCRIBING TO POLICY | § | CIVIL ACTION NO. 06-4350 |
| NO. 901/LU0435398, | § | c/w    06-5060 |
| | § |         06-5057 |
| **Plaintiffs** | § | |
| | § | SECTION "R" |
| VERSUS | § | |
| | § | MAGISTRATE (4) |
| JESUIT HIGH SCHOOL | § | |
| OF NEW ORLEANS, | § | |
| | § | |
| **Defendant** | § | |

**REPLY MEMORANDUM OF JESUIT HIGH SCHOOL OF NEW ORLEANS
TO KILN'S MEMORANDUM IN OPPOSITION TO JESUIT'S MOTION FOR
SUMMARY JUDGMENT ON BUSINESS INTERRUPTION COVERAGE**

**COMES NOW,** Jesuit High School of New Orleans, through undersigned counsel, in order

to reply to Kiln's Opposition Memorandum regarding Business Interruption Coverage.

All page references are to the **Lloyd's** policy. (Rec. Doc. 239, Exhibit A-PM3–Lloyd's

Policy)

First and foremost, the **Schedule of sub-limits-Section A** is not a policy exclusion, but rather a dollar limit on individual coverage areas.  It is a limitation where so stated in the amount of per-category coverage.  In other words, Earthquake is sublimited to $250,000.  Flood is sublimited to $250,000 as opposed to the **SECTION A DECLARATIONS LIMIT OF LIABILITY** of "US $24,800,068 each and every loss." (Page 5)

The **LLOYD'S** policy contains a **MAIN SCHEDULE** (Page 1) and a **SECTION A DECLARATIONS** (Page 5). The **MAIN SCHEDULE** under **The Interest"** refers to "Section A."  The **MAIN SCHEDULE** is not limited to **SECTION A COVERAGE PART I OR SECTION A COVERAGE PART II OR SECTION A COVERAGE PART III**.  The Main Schedule refers to the entirety of Section A which includes **COVERAGE PARTS I-VII.** (Pages 17-34)

Such is to be compared with Section B in the **MAIN SCHEDULE**.  Section B is broken down into four separate sections, namely B(1), B(2), B(3), B(4), each of which contain separate insurance limits. (Page 1 of 90)

**SECTION A DECLARATIONS** (Page 5 of 90) refers to the entirety of **SECTION A**.  The **SECTION A** coverage amount is $24,888,068.  The only specific sublimits referenced on Page 5 are "Earthquake" which is sublimited to $250,000, "Flood" which is sublimited to $250,000 and "Property in the Course of Construction…" which is sublimited to $2.5 million.  **SECTION A DECLARATIONS** (Page 5) contains the following verbiage:  "All other sublimits as attached if applicable."  Jesuit High School maintains that the Business Interruption reference on the **Schedule of sub-limits-Section A** is inapplicable since Business Interruption contains no sublimit amount.

2

Business Interruption coverages are not sublimited.  Business Interruption coverage is provided in the amount of $24,880, 068.

Kiln now contends that its policy does not contain Business Interruption coverages.  Kiln contends that its policy is not ambiguous.  The undersigned agrees that the policy contains no ambiguity as evidenced by Kiln's Original and First Supplemental Complaint for Declaratory Relief wherein Kiln specifically plead that its policy contained Business Interruption coverages.

The Court is referred to Page 10 entitled,

"**13. SERVICE INTERRUPTION.**  This section is  intended to cover physical damage and/or business interruption loss and/or extra expense sustained and/or incurred and/or Rental Income/Value lost resulting from damage to or destruction of, by an accidental occurrence, property of the type not excluded by this Section of any suppliers furnishing heat, light, power, gas, water, outgoing sewerage, telecommunications or similar services to the assured's premises.

Service Interruption is a **GENERAL CONDITION "APPLICABLE TO ALL COVERAGE PARTS"** (Page 7 of 90).  Service Interruption is not "excluded by this section." Service Interruption is not excluded in Section A.  Accordingly, Jesuit High School would have service interruption coverage up to $24,880,068 which is the Section A limit of coverage.  Such is consistent with the aforementioned reading of the **Schedule of sub-limits-Section A** since Service Interruption is not sublimited.

Query:  What underwriter would issue a policy of insurance  which includes sections (not clauses or paragraphs) but entire coverage sections when such sections contain explicit coverages which the underwriter is not insuring?  The interpretation advanced by Lloyd's is illogical and non-sensical.  Does Kiln suggest that its assured must selectively delete certain of the GENERAL

3

CONDITIONS paragraph contained in Kiln's policy in addition to specific entire **SECTION A COVERAGE PART(s)**.

The parties both contend that the policy is clear and unambiguous. Again, the lack of ambiguity is apparent in Kiln's Original Complaint for Declaratory Judgment and as reinforced in Kiln's Amended Complaint. Both complaints specifically plead Business Interruption coverages which allegations were admitted by Jesuit. However, to the extent ambiguity exists, such must be construed against the drafter—in this case, Kiln.

Section A consists of 7 separate parts; namely,

1.    **"PROPERTY DAMAGE" (PAGE 17-18)**

2.    **"BUSINESS INTERRUPTION (GROSS EARNING)" (PAGE 19-22)**

3.    **"EXTRA EXPENSE) (PAGES 23-24)**

4.    **"RENTAL INCOME/VALUE" (PAGES 25-27)**

5.    **"LEASEHOLD INTEREST" (PAGE 28)**

6.    **"ACCOUNTS RECEIVABLE (PAGES 29-30)**

7.    **"MONEY AND SECURITIES" (PAGES 31-32)**

**SECTION A COVERAGE PART I "PROPERTY DAMAGE"** is not listed on the **Schedule of sub-limits**. Is Kiln suggesting that **SECTION A COVERAGE, PART II "BUSINESS INTERRUPTION" SECTION A COVERAGE PART IV "RENTAL INCOME/VALUE", SECTION A COVERAGE PART V "LEASEHOLD INTEREST", AND SECTION A COVERAGE PART VI "ACCOUNTS RECEIVABLE** are all excluded from coverage because of the single notation "Not Included" on the Schedule of Sublimits? If so,

4

why are those four separate individual sections included in the policy.   It is conceded that **SECTION A COVERAGE PART III EXTRA EXPENSE** contains a $500,000 sublimit. Otherwise, **EXTRA EXPENSE** would be subject to the same Section A $24,880,068 amount of coverage.

Is Kiln suggesting that it, as the insuring underwriter, routinely includes entire coverage sections (again, not clauses, phrases or paragraphs) in its policies of insurances wherein its intent is to exclude coverage?

This policy contains absolutely no reference to Business Interruption coverage being excluded.   The insurer, for reasons cited in Jesuit's original memorandum, must prove a policy exclusion.

Finally, Kiln correctly acknowledges on Page 7 of its brief that policy interpretation is a question of law for the Court.   Jesuit respectfully submits that the question of policy interpretation is to be decided by the language contained within the four corners of the insurance policy. Accordingly, the extrinsic testimony of  Waldorf & Associates, its employees, Affidavit of McKeown, and the President's Advisory Council (PAC) Minutes of October 18, 2005 should be completely disregarded by the Court in making its coverage decision.

Jesuit moves this Court to strike the Affidavit of Mr. McKeown, the references to the Waldorf deposition testimony and the PAC Minutes from the record as such constitute improper evidence in an insurance coverage dispute.

Notwithstanding the request to strike the Affidavit of Phillip McKeown, there is a significant difference between the Affidavit and the **POLICY**.  The Court's attention is called to Paragraph 14

5

of the Affidavit which states "There appear to be two very pertinent sections in the placing slip PM 2...." "This records that JLT is seeking on behalf of Jesuit High School the following covers:

> Section A(1) On all real and personal property of every kind and description including property of others in the care, custody or control of the insured as per the institutional property wording 2003 901/JLT/00079..."

The actual policy contains no specific reference to Section A(1). The actual policy contains no reference to coverages being limited to Section A(1). Is Section A(1) the same as "**SECTION A COVERAGE PART I**"? **SECTION A COVERAGE PART I** is entitled "**PROPERTY DAMAGE**" (Page 17-90). There is no Section A(1) in the POLICY. The actual **POLICY** of insurance, as referenced above, in both the **MAIN SCHEDULE** under "The Interest" (Page 1 of 90) and in the **DECLARATIONS** (Page 5) refer only to Section A. Section A, as discussed above, contains 7 separate parts. The conclusion is inescapable. Kiln issued Jesuit High School coverage for all seven sections set forth in Section A but limited the dollar coverage for Section III, Extra Expense, to $500,000. Any alternative reading leads to ambiguity which is construed against Kiln.

Kiln in its opposition to both this motion and Jesuit's Extra Expense motion has asserted that Jesuit's claims in this litigation and its filings in connection with its FEMA application are contradictory. Kiln maintains that the FEMA filings rely upon "Flood" where this litigation contends the Jesuit facility at Carrollton and Banks did not flood. Jesuit did make application for funding with FEMA based upon the FEMA definition of Flood which in 44 CFR 59.1 states:

> Flood or Flooding means:
>
> (a) A general and temporary condition of partial or complete inundation of normally dry land areas from:...

(2)  The unusual and rapid accumulation or runoff of surface waters from any source. Accordingly, Jesuit requests that this Court find in favor of Business Interruption coverage.

The water issue with Jesuit fits the FEMA definition of flood.  The FEMA definition of flood is markedly different than that contained in the Kiln policy.

The Kiln policy, Page 8, **GENERAL CONDITION 6. FLOOD** states: "Water which backs up through sewers and drains is not to be considered flood and is covered under the perils insured hereby with no aggregate limit of liability." Jesuit's claim against underwriters which underwriters have denied, is that the water which entered Jesuit High School (other than rain) occurred through the backup of sewers and drains primarily as a result of a geographic anomaly surrounding the location of Jesuit High School.   Thus, according to Kiln's policy language the water intrusion does not fall within the Kiln definition of  "flood."

Accordingly, Jesuit requests that this Court find in favor of Business Interruption coverage.

Respectfully submitted,


 /s/ Michael A. McGlone
**MICHAEL A. McGLONE, T.A.**  (#9318)
**ANTHONY M. WILLIAMS** (#26750)
Kean, Miller, Hawthorne, D'Armond,
McCowan, & Jarman, L.L.P.
909 Poydras Street, Suite 1450
New Orleans, Louisiana  70112
(504) 586-1241
ATTORNEY FOR DEFENDANT
JESUIT HIGH SCHOOL OF NEW ORLEANS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the  29th day of July, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all known attorneys in this matter who have consented to e-mail notification and electronic service.  If there are any known counsel of record who have **not** consented to e-mail notification and electronic, I hereby certify that I have made service on them via U.S. Mail, postage prepaid, this same date.

                                                 /s/ Michael A. McGlone