UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KILN UNDERWRITING LTD., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   06-04350 c/w**<br>        **06-05060**<br>        **06-05057** |
| **JESUIT HIGH SCHOOL OF NEW ORLEANS** | **SECTION: "R" (4)** |

### ORDER

Before the Court is a **Motion for Leave to File Plaintiff's Second Amended Complaint for Declaratory Judgment (R. Doc. 148)**, filed by the Plaintiff, Kiln Underwriting Limited, Individually and as the Authorized Representative of Certain Underwriters and Insurers at Lloyd's of London, severally subscribing to Policy No. 901/LU0435398 ("Kiln"), seeking leave to file its second amended complaint.  In response, the Defendant, Jesuit High School of New Orleans ("Jesuit") filed a Memorandum of Jesuit High School of New Orleans in Opposition to Plaintiff's Motion to File Second Amended Complaint for Declaratory Judgment (R. Doc. 156).  The Court initially heard the motion with oral argument on April 16, 2008, however, it became clear that additional briefing was necessary to fully resolve the issue.  Therefore, the Court ordered supplemental briefing from the parties, and reset the motion for hearing on May 21, 2008, with oral argument.

In response to the Court's directive, Kiln filed a Supplemental Brief in Support of Motion for Leave to File Plaintiff's Second Amended Complaint for Declaratory Judgment (R. Doc. 174), to which Jesuit responded in Jesuit's Opposition to Kiln's Supplemental Brief in Support of Motion

for Leave to File Plaintiff's Second Amended Complaint for Declaratory Judgment (R. Doc. 180). Thereafter, Kiln filed a Sur-Reply Brief in Support of Motion for Leave to File Plaintiff's Second Amended Complaint for Declaratory Judgment (R. Doc. 186), again, to which Jesuit responded in a Supplemental Memorandum of Jesuit High School of New Orleans in Opposition to Plaintiff's Motion to File Second Amended Complaint for Declaratory Judgment (R. Doc. 197).

Kiln has also filed various *ex parte* motions for leave to file additional materials, including a Motion for Leave to File Affidavit of Phillip McKeown re Motion for Leave to File Second Amended Complaint (R. Doc. 240), which Kiln requested hearing upon (R. Doc. 248), and a Motion for Leave to File Newly-Discovered Evidence Constituting an Admission Against Interest by Jesuit High School in Connection with Kiln's Motion for Leave to File Second Amended Complaint for Declaratory Judgment (R. Doc. 251). Jesuit opposed both motions. (R. Docs. 244, 262.) The Court considers these supplementary motions in its opinion below.

**I.     Background**

Jesuit, a parochial high school located in New Orleans, Louisiana, purchased institutional property insurance from Kiln for the period of November 1, 2004 to November 1, 2005, for its facilities located (1) on 4133 Banks Street, New Orleans, Louisiana, and (2) in Pass Christian, Mississippi. (R. Doc. 3.) Jesuit sought to recover insurance proceeds from Kiln when its properties were damaged on or about August 29, 2005, by the effects of Hurricane Katrina. (R. Doc. 3.)

After Kiln wire-transferred a payment of $250,000.00 to Jesuit on February 23, 2006, Father Anthony S. J. McGinn ("Father McGinn"), the President of Jesuit, submitted an unsworn partial proof of claim to Jesuit's insurance agent and retail broker, Waldorf and Associates, Inc. ("Waldorf & Associates"), claiming that Jesuit's facilities had sustained damages in excess of $13,000,000.00,

2

far beyond the $250,000.00 paid. (R. Doc. 3.) Jesuit's partial proof of loss included a business interruption claim for $2,162,969.00. (R. Doc. 156-3, p. 5.) However, Kiln and Jesuit disputed the nature and extent of the coverage available under the policy, and therefore, Kiln filed the instant action for declaratory relief. (R. Doc. 3.)

In Kiln's complaint, Kiln indicated that Jesuit's policy included business interruption coverage. In Paragraph 7 of both Kiln's original complaint and its first amended complaint, Kiln averred that "London Underwriters issued Jesuit a policy of institutional property insurance, including business interruption coverage . . . for the period November 1, 2004 to November 1, 2005, as per mutual agreement." (R. Doc. 1, p. 3; R. Doc. 3, p. 3.) Similarly, in Paragraph 8, Kiln maintained that the institutional property insurance coverage included business interruption coverage. (R. Doc. 1, p. 4; R. Doc. 3, p. 4.) Kiln also noted in Paragraph 10 of both the original and first amended complaint, that the policy contained a "schedule of sub-limits" (R. Doc. 1, p. 4; R. Doc. 3, p. 4.)

The subject dispute arises from the schedule of sub-limits attached to Jesuit's insurance policy. Kiln maintains that though it initiated the lawsuit on August 16, 2006, the first time that it received a complete and certified copy of the insurance policy at issue, including the schedule of sub-limits was in January 9, 2008. The schedule of sub-limits expressly indicates that business interruption insurance is "Not Included" in Jesuit's policy. However, further confusing this matter, are the parties' actions and assertions leading up to January 9, 2008, which are detailed as follows.

On August 16, 2006, Kiln drafted a Reservation of Rights letter which advised Jesuit of Kiln's position. (R. Doc. 156-2.) In the letter, Kiln dedicates three and a half pages to discussing the conditions, limitations, and exclusions of business interruption coverage. (R. Doc. 156-2.) As

to business interruption coverage, the letter indicates that "This Coverage Part insures against loss resulting directly from necessary interruption of business caused by direct physical loss or damage by any of the perils insured by this Section to property insured by this Section occurring during the Period of insurance." (R. Doc. 156-2, p. 11.)

Thereafter, on November 14, 2007, the parties conducted a Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition of Jesuit. (R. Doc. 180-4, Ex. 3.) At that time, counsel for Kiln, Michael J. Maginnis ("Maginnis") directed the witness to the language in the schedule of sub-limits, and questioned the witness if "business interruption coverage" existed under the schedule of sub-limits. (R. Doc. 180-4, Ex. 3, p. 4.) The following exchange transpired:

> Q. [MR. MAGINNIS] Beneath that, there's an indication that business interruption coverage, there is none for that?
> A. (MR. O'DONNELL) It says, "Not included."

(R. Doc. 180-4, Ex. 3, p. 4.) The witness also testified that Jesuit had only been provided the entire policy as of October 2005, after Hurricane Katrina. (R. Doc. 180-4, Ex. 3.)

During this litigation, Kiln also retained a forensic accounting firm to "determine the loss of business income and extra-expense as a result of damages associated with Hurricane Katrina." (R. Doc. 180-9, Ex. 8, p. 1.) The firm concluded on January 9, 2008 that Jesuit "sustained a business interruption loss for the period of August 29, 2005 through May 31, 2006 of $1,130,991." (R. Doc. 180-9, Ex. 8, p. 4.)

Finally, on January 9, 2008, Jesuit provided Kiln with a copy of the policy and the schedule of sub-limits, and the parties deposed Christopher Waldorf ("Waldorf"), a principal at Waldorf & Associates, on the following day. Waldorf certified the validity of the policy and testified that he gave copy of the policy and the schedule of sub-limits to Jesuit on May 13, 2005, prior to Hurricane

4

Katrina. He further testified that based on the schedule of sub-limits, business interruption insurance was not included as a part of policy coverage. (R. Doc. 186-3, Ex. B.)

Kiln asserts that it discovered for the first time on January 9 and 10, 2008 that business interruption coverage was "not included" in the policy. Therefore, Kiln now seeks to supercede its previous pleadings and remove its assertions regarding business interruption coverage. Kiln seeks to newly allege that the insurance policy in contention "does not provide coverage with respect to business interruption (including full payroll)." (R. Doc. 148-3, p. 4, emphasis original.) Kiln contends that it should be permitted to conform its complaint to the evidence because its attorneys operated under an honest misapprehension of the facts. It maintains that it acts without dilatory motive and in good faith. Kiln admits that while it may have received a copy of the complete schedule of sub-limits in November 14, 2007, it "prudently" waited to obtain the sworn testimony to certify the contents of the policy from Waldorf, the only entity authorized to certify the policy. Furthermore, while it concedes that it brought the lawsuit against Jesuit before having the schedule of sub-limits, it alleges that Jesuit had a complete copy and yet circulated an incomplete copy throughout discovery. Kiln therefore asserts that Jesuit's counsel were knowledgable of the policy terms, and therefore, cannot claim unfair surprise on the amendment.

Jesuit opposes Kiln's motion, and contends that Kiln judicially admitted that Jesuit possessed business interruption coverage, and therefore, is bound by its conclusive admission, which is incontrovertible at trial or on appeal.[1] Jesuit contends the record strongly suggests that Kiln had a copy of the schedule of sub-limits far in advance of January 9, 2008, based on Kiln's repeated

---

[1] Jesuit also argues that Kiln's claims regarding business interruption insurance also constitute an affirmative defense, which must be raised in the first responsive pleading, or be waived. However, the Court declines to address this argument because the previous presiding U.S. District Court Judge G. Thomas Porteous, Jr. ("Judge Porteous") has already permitted Kiln to amend its affirmative defenses, thereby, resolving Jesuit's arguments of waiver. (R. Doc. 120.)

5

reference to sub-limit provisions, which would only be contained in the schedule of sub-limits. Jesuit also asserts that while there is no "sub-limit" for business interruption coverage, business interruption coverage is included in the "overall" policy coverage of $24,000,000.00. Jesuit notes that Kiln retained a forensic accounting firm to calculate business interruption coverage under the policy, thereby corroborating the existence of such coverage. Consequently, Jesuit seeks to prevent Kiln from amending its pleadings to deny such coverage.

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 15(a)(2) governs the amendment of pleadings and provides that a "court should freely give leave when justice so requires."  The Rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so. *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).  Furthermore, "this 'policy' is strongest when the motion challenged is the first motion to amend." *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981).  Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. *Id.*

However, leave to amend is by no means automatic. *Addington v Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981).  The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court. *Id*.  In exercising its discretion, the trial court may consider such factors as (1) undue delay, bad faith, or dilatory motive by the movant, (2)

the repeated failure to cure deficiencies by previously allowed amendments, (3) undue prejudice to the opposing party if the amendment is allowed, and (4) futility of the amendment. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981).

### III.    Analysis

Kiln maintains that it should be permitted to amend its mistaken assertion of the existence of business interruption insurance because it was based on an incomplete copy of the policy. Kiln argues that policy coverage is a question of law and not fact, to be determined by the Court, and its misinformed assertions in its complaint do not override the reality that the schedule of sub-limits excludes business interruption coverage.

Kiln further maintains that judicial admissions are restricted to facts which require evidentiary proof, and do not extend to counsel's opinion, conclusion, or legal theory of the case. It stresses that admissions in superseded pleadings lose their binding force and only have value as evidentiary admissions, which it may disprove with other evidence. It additionally notes that the market for insurance placement for Underwriters of Lloyd's of London is not similar to regular insurance companies and Kiln did not draft the insurance policy.

Kiln also avers that whatever claims Jesuit has regarding whether it was properly advised regarding the purchase of appropriate insurance coverage must be brought against the broker, Waldorf, and not Kiln. However, Kiln asserts that Jesuit has effectively waived such claims because it only asserted a claim against its brokers for insufficient flood coverage.

In opposition, Jesuit argues that the existence of business interruption coverage is a fact that requires evidentiary proof, while whether it sustained a business interruption loss and the valuation of that loss would constitute legal opinion or conclusion to be determined at trial. Therefore, it

stresses that Kiln's assertion of business interruption coverage qualifies as an admission. In support of its position, Jesuit cites Louisiana case law that states that the burden in an insurance action is on the plaintiff to establish the facts essential to his cause of action or right to recovery, including *existence* of the policy and its terms and provisions and that his claim is within coverage.

The Court notes that while the substantive assessment of whether Kiln's affirmative statements constitute binding admissions is pertinent in determining whether to permit amendment, the Court is only called upon to reach a procedural determination here.[2] The substantive issue regarding admissions is more appropriately before the presiding U.S. District Court Judge. The Court, therefore, proceeds with its consideration of the instant motion below, however, this opinion will focus solely the procedural issue of whether Kiln may amend its pleadings.

### A.     Undue Delay, Bad Faith, or Dilatory Motive

Here, Kiln sought to amend its pleadings on March 5, 2008, prior to the May 12, 2008 modified deadline set forth in the Scheduling Order issued by presiding U.S. District Court Judge

---

[2] The Court notes that generally, factual assertions in pleadings constitute "judicial admissions" that are conclusively binding on the party that made them. *White v. Arco/Polymers, Inc*., 720 F.2d 1391, 1396 (5th Cir. 1983). Judicial admissions constitute formal proof, and possess the highest possible probative value because they are established beyond the need of evidence to prove them. *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000); *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). Judicial admissions generally (1) are restricted to matters of fact which otherwise would require evidentiary proof, and therefore, do not include legal theories or conclusions and (2) must be unequivocal, deliberate, and unambiguous. *MacDonald v. General Motors Corp*., 110 F.3d 337, 340 (6th Cir. 1997); *In re Cendant Corp. Sec. Litig*., 109 F. Supp. 2d 225, (D.N.J. 2000). Furthermore, "judicial admissions generally pertain to matters that a party is uniquely positioned to know and concede, as opposed to facts uniquely known or controlled by an adverse party." *In re Methyl Tertiary Butyl Ether Products Liab. Litig*., 379 F.Supp.2d 348, 371 (S.D.N.Y. 2005).

Parties are bound by the admissions in their pleadings, even despite contradictory facts in the record. *Davis v. A.G. Edwards and Sons, Inc*., 823 F.2d 105, 108 (5th Cir. 1987); *Bender v. Suburban Hosp., Inc*., 159 F.3d 186, 192 (4th Cir. 1998). However, "considerations of fairness and the policy of encouraging judicial admissions" provide that trial judges with broad discretion to relieve parties from the consequences of judicial admission in appropriate circumstances. *U.S. v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975); *see also Coral v. Gonse*, 330 F.2d 997, 998 n. 1 (4th Cir. 1964); *Sullivan v. William Randolph, Inc*., 504 F.3d 665, 669 (7th Cir. 2007).

Sarah S. Vance, upon transfer of the matter. Therefore, Kiln maintains that there is no undue delay in its request to amend and that Jesuit may still engage in discovery to prove its claims.

However, Jesuit maintains that Kiln's leave to amend was filed more than two years after Hurricane Katrina and 20 months after Kiln filed the lawsuit. Jesuit stresses that Kiln's pleadings have controlled the litigation for nearly two years, and in fact, Kiln was prepared to proceed to trial with its previous trial date and with its previous pleadings.

Upon review of the matter, the Court notes that although Kiln moved to timely amend prior to the deadline to amend pleadings, there is evidence of delay. The time that has elapsed since Kiln initiated this lawsuit to when it sought ultimately to amend is substantial. During the time that Kiln first advanced its position as to the policy coverages in it complaint, Kiln and Jesuit have since made numerous assertions, filed multiple motions, settled other parties out of the matter, and conducted a plethora of discovery based on the language in Kiln's complaint. Despite the new deadline to amend, the progress and direction of the case have already been defined by the parties' substantive pleadings.

Kiln ultimately acted within the new deadline to amend pleadings. However, as evidenced by numerous discovery motions recently filed the parties with respect to this issue, Kiln's attempt to amend such a critical aspect of its pleadings at this stage of the proceedings–when the parties' have substantially solidified their positions–results in significant delay. Therefore, this factor weighs against allowing Kiln's amendment.

### B. Repeated Failure to Cure Deficiencies

The Court next examines whether Kiln repeatedly failed to cure deficiencies in its pleadings. This is Kiln's second amended complaint, and thus, third version of its complaint. Kiln, however,

9

contends that it did not repeatedly fail to cure its deficiencies, given that it only recently learned in January of 2008 that business interruption coverage was "not included" under the schedule of sub-limits.

However, Jesuit points to deposition testimony revealing that Kiln (1) possessed the schedule of sub-limits as early as November 14, 2007, (2) drafted two loss adjustments that reference the sub-limits prior to Kiln's filing of the subject declaratory action, and (3) referenced the sub-limits in approximately seven previous pleadings before the Court.

After considering the parties' arguments, the Court notes that while Kiln alleges that it only received a full, certified copy of the schedule of sub-limits in January 9, 2008, a deposition transcript illustrates that Kiln possessed a copy of the schedule of sub-limits at least by November of 2007. Therefore, Kiln's allegation that it was not aware of the coverages until January 9, 2008 is not simply true.

The copy of the schedule of sub-limits in Kiln's possession in November of 2007 was clearly sufficient to provide notice of the issue of coverage. However, between November 2007 and January 2008, Kiln did nothing. Kiln also retained a forensic accounting expert in conjunction with this matter, and the expert ultimately rendered a report on January 9, 2008, specifically estimating the extent of business interruption losses sustained by Jesuit. (R. Doc. 180-9, Ex. B.) Despite the issuance of this detailed valuation report on January 9, 2008 and Kiln's "discovery" of the lack of business interruption coverage on that same day, Kiln elected not to bring this issue to the Court until almost two months later. Therefore, even operating from the January 9 and 10, 2008 dates–some two years after Kiln initiated this declaratory action against Jesuit–Kiln still delayed

nearly two more months until March 5, 2008 to bring this issue before the Court, even though this issue demanded immediate attention.

Therefore, the Court concludes that Kiln repeatedly failed to cure its alleged pleading defects in spite of evidence in the record showing its awareness of the alleged defects. Based on the timing of when Kiln had access to the schedule of sub-limits, Kiln had many opportunities to amend its pleadings, but failed to do so. Consequently, this factor weighs against permitting amendment.

### 3. Undue Prejudice if Amendment Allowed

The Court next looks to the prejudice suffered by Jesuit if the Court permits the amendment. Kiln asserts that its proposed amendment does not subject Jesuit to unfair surprise or manifest injustice because Waldorf testified that Jesuit received a copy of the policy on May 13, 2005, and purportedly knew of its lack of business interruption coverage before the litigation even commenced. Kiln maintains that Jesuit is also not prejudiced by the additional discovery that Kiln undertook with regards to business interruption coverage because the policy provides for extra-expense coverage, and therefore, Kiln had to review Jesuit's financial records, regardless of the existence of any business interruption coverage.

In opposition, Jesuit maintains that it prejudicially relied on Kiln's assertions that it was covered by business interruption insurance from the outset of the litigation, and that it only received a complete policy after the litigation commenced, in October 2005.

Here, permitting Kiln to withdraw and contradict its earlier, express factual assertions would be highly prejudicial at this juncture because this entire case has proceeded on Kiln's assertions for the course of approximately two years. First, on August 16, 2006, Kiln sent a 20-page "Reservations of Rights" letter to counsel for Jesuit, describing the terms of and limitations of the insurance

11

coverage. (R. Doc. 156-2.) The letter did not deny business interruption coverage. Rather, in the 20-page letter, Kiln dedicated over three and a half pages to expounding upon the "conditions, limitations, and exclusions" of business interruption coverage under the policy. (R. Doc. 156-2, p. 11.) Second, Kiln retained and paid a forensic accounting firm to calculate the business interruption loss sustained by Jesuit. Thereafter, the firm generated a report from its findings, indicating that per Kiln's request, "We calculate a business interruption loss for the same period, or August 29, 2005 through May 31, 2006. . . . at $1,130,991."[3] (R. Doc. 180-9, Ex. 8, p. 2.) The report also did not deny business coverage. The Court concludes that these two documents potently illustrate that the parties expended extensive litigation resources, finances, time, and efforts based on Kiln's original assertions that Jesuit's insurance policy included business interruption coverage. To allow Kiln to retract and strategically escape from the conclusive nature of misstatements that it held for more than two years into the litigation and after Jesuit has since relied, would alter the course and context of the entire lawsuit and the fundamental foundation upon which it is based.

Both Kiln and Jesuit would have to engage in significant and new case preparation as a result of Kiln's assertions regarding the issue of business interruption insurance, even though Jesuit had previously been placed on notice that the assertions were not at issue. *See Missouri Housing Development Commission v. Brice*, 919 F.2d 1306, 1316. (8th Cir. 1990) (holding that where an amendment substantially changes the theory upon which a case has been proceeding and is late, so that the opponent must engage in significant and new case preparation, then it may considered prejudicial) (citing Wright & Miller, § 1487, at 623 (2d ed. 1990). As of the Court's last count, the parties have filed in upwards of 20 motions and documents into the Court's record pertaining to this

---

[3] According to the report, Kiln's expert accounting firm considered the increase in donations to Jesuit, lost revenue, monthly revenues, and other profit and loss data, in reaching its calculations. (R. Doc. 180-9, Ex. 8, p. 3.)

very issue, since this issue first came to light in March of 2008. In fact, at this time, this issue is also pending before the presiding U.S. District Court Judge, in the form of a motion for summary judgment filed by Jesuit. (R. Doc. 183.) Given the recent motion practice and the voluminous filings by the parties after the emergence of this dilemma, the Court notes that the parties have already begun to pursue such new case preparation, therefore illustrating the veritable prejudice from Kiln's proposed amendment.

Kiln also asserts that it is not the correct party with regards to Jesuit's claims on business interruption coverage, but rather, Jesuit should have lodged any such claims against Waldorf & Associates, who has already settled out of the action. Here, Kiln's self-serving argument underscores the *very* prejudice which results from Kiln's attempt to now amend. Implicitly, according to Kiln, because Jesuit earlier resolved its claim against Waldorf & Associates, it may have forfeited potential claims against Waldorf & Associates that Jesuit may have had regarding the acquisition of insurance. Therefore, Jesuit may now be precluded from pursuing legal remedies against Waldorf & Associates regarding business interruption insurance because it relied upon on Kiln's assertions in the complaint that the subject policy provided business interruption coverage.[4] Given this prejudice, Kiln cannot now shirk from the assertions made in its complaint.

Kiln initiated the subject lawsuit, setting the case in motion by filing its complaint. More significantly, it is uniquely situated as the insurer to know the terms of the insurance policy which

---

[4] The Court notes, however, that Kiln asserts that it maintained in its settlement position papers that no business interruption coverage existed. (R. Doc. 168, pp. 11-12.) Kiln does not elaborate on whether those "position papers" were those prepared for the settlement negotiations on January 18, 2008. (R. Doc. 168, pp. 11-12.) Even if they were so prepared, the Court is not convinced that Jesuit consulted or even had access Kiln's position papers when reaching its January 18, 2008 settlement with Waldorf. Rather, the record reflects that Jesuit did however have access to Kiln's complaint, in which Kiln maintained that business interruption coverage was included in the policy.

it issued.[5] However, it now seeks to amend away assertions it made in its complaint and maintained throughout the litigation because it allegedly had an incomplete copy of the insurance policy at the time it drafted its complaint and during the process of the litigation.

Furthermore, now appreciating the gravity of its assertions, Kiln advances a series of alternative arguments to deflect responsibility and explain away its affirmative statements of business interruption coverage. Kiln contends that: (1) in the Underwriters at Lloyd's of London insurance market, the brokers draft the policy, and therefore, even though Kiln reviewed and approved the policy before its issuance, Kiln is not responsible for policy terms, (2) business interruption coverage is not typically provided to not-for-profit institutions, therefore Jesuit is not prejudiced by the proposed amendment, (3) business interruption coverage is legal and not factual issue, despite Louisiana case law that indicates otherwise,[6] and (4) Judge Porteous already permitted Kiln to amend its affirmative defenses on February 11, 2008 (R. Doc. 120)[7] even though neither party alluded to any issue regarding business interruption coverage in the pleadings before Judge Porteous (R. Docs. 77, 111). The Court has considered each and every additional contention that Kiln has made as to why it should be permitted to amend, and the Court is not persuaded by any of these arguments.

---

[5] In Louisiana, an insured may rely upon admissions regarding coverage made by the insurer, as an insurer should know the terms of the insurance policy, which it issued to the insured. *See Smith v. Cumis Ins. Society, Inc.*, 427 So.2d 1361, 1362-63 (La. App. 4 Cir. 1982) (concluding that even though a copy of the policy was not entered into the record as evidence, the insurer's "admissions establish coverage."); *Smith v. Doe*, 786 So.2d 154, 158 (La. App. 4 Cir. 2001) (reasoning that the insurer's admission of coverage precluded it from arguing otherwise).

[6] *See Gulf Wide Towing, Inc. v. F.E. Wright (U.K.), Ltd.*, 554 So.2d 1347, 1352 (La. App. 1 Cir. 1989) (reasoning that existence of an insurance policy, its terms and provisions, and coverage on the claim sued upon are all "facts" that must be proven to recover under an insurance policy); *Henry's Marin Serv., Inc. v. Fireman Fund Ins. Co.*, Civ. A. 02-3682, 2003 WL 22415986, at *4 (Vance, J) (same)

[7] Kiln amended its affirmative defenses to aver that "[t]he policy does not include coverage with respect to business interruption (including full payroll)." (R. Doc. 126, p. 6.).

14

After considering the resounding evidence above, the Court concludes that Jesuit would suffer substantial prejudice in this matter if the Court permitted Kiln to amend its complaint to eliminate its affirmative statements regarding business interruption coverage. Therefore, this factor weighs strongly against permitting amendment.

### 4. **Futility of Amendment**

Finally, the Court addresses the futility of Kiln's proposed amendment. Kiln maintains that its proposed amendment would not be meritless or frivolous, because the schedule of sub-limits is a governing document that will confirm the undisputed evidence in the case. Jesuit does not dispute the futility of Kiln's amendment.

Typically, under Rule 15, if a proposed amendment is futile, then the justification for permitting the amendment is weak and a court may preclude its filing into the record. However, here, the Court is presented with the inverse application of Rule 15–the movant is not seeking to insert additional claims or allegations into the pleadings, but rather, seeking to withdraw and eliminate allegations previously made. In this case, the assertions regarding business interruption coverage which Kiln seeks to redact are anything but futile, for they are integral to the substantive determination of the claims. These are live issues regarding whether Kiln's affirmative statements in its complaint constitute admissions, and what effect those statements have on the outcome of the proceedings. Given the significance of Kiln's assertions regarding business interruption coverage, the request to amend and or delete any reference to it is denied.

### C. **Leave to Supplement**

While this instant motion was pending, Kiln filed two motions for leave to supplement the record with testimony regarding the insurance policy and evidence regarding the structure of

Underwriters at Lloyd's of London. Kiln has already presented ample evidence which speaks to the issues at hand. Additional evidence as to the lack of business interruption coverage will not facilitate a review of this matter regarding leave to amend. Factual information regarding the substantive effect of Kiln's statements are more probative towards the pending motion for summary judgment before the U.S. District Court. Accordingly, the Court denies Kiln's motions for leave to file additional evidence.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that Kiln's **Motion for Leave to File Plaintiff's Second Amended Complaint for Declaratory Judgment (R. Doc. 148)** is **DENIED**.

**IT IS FURTHER ORDERED** that Kiln's **Motion for Leave to File Affidavit of Phillip McKeown re Motion for Leave to File Second Amended Complaint (R. Doc. 240)** is **DENIED**.

**IT IS FURTHER ORDERED** that Kiln's **Motion to Set Hearing on Kiln's Motion for Leave to File Affidavit of Phillip McKeown (R. Doc. 248)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that **Kiln's Motion for Leave to File Newly-Discovered Evidence Constituting an Admission Against Interest by Jesuit High School in Connection with Kiln's Motion for Leave to File Second Amended Complaint for Declaratory Judgment (R. Doc. 251)** is **DENIED**.

New Orleans, Louisiana, this <u>8th</u> day of August 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**