**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KILN UNDERWRITING LTD., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                             NO:    **06-04350 c/w**
                                                              **06-05060**
                                                              **06-05057**

**JESUIT HIGH SCHOOL OF NEW**                          **SECTION: "R" (4)**
**ORLEANS**

## <u>ORDER</u>

Before the Court is a **Motion of Jesuit High School of New Orleans to Quash Supplemental Deposition of Waldorf & Associates Noticed by Kiln Underwriting Limited (R. Doc. 261)**, filed by the Defendant, Jesuit High School of New Orleans ("Jesuit"). The Plaintiff, Kiln Underwriting Ltd. ("Kiln"), filed a Memorandum in Opposition to Jesuit High School of New Orleans' Motion to Quash Supplemental Deposition of Waldorf & Associates (R. Doc. 264). Thereafter, Jesuit replied, in its Supplemental Memorandum in Support of Jesuit High School of New Orleans' Motion to Quash Additional Depositions of Waldorf & Associates (R. Doc. 272). The motion was heard with oral argument on July 23, 2008.

During oral argument, the Court ordered Kiln to file a full copy of the deposition transcript at issue into the record. Kiln complied with the Court's mandate, and filed Kiln Underwriting Limited's Supplemental Memorandum in Opposition to Jesuit High School of New Orleans' Motion to Quash Supplemental Deposition of Waldorf & Associates (R. Doc. 277). Jesuit responded in an Opposition of Jesuit High School of New Orleans to Plaintiff's Supplemental Memorandum in Opposition to Jesuit High School's Motion to Quash Deposition of Waldorf & Associates (R. Doc. 279).

Kiln subsequently filed an **Ex Parte Motion for Expedited Ruling on Jesuit's Motion to Quash Continuation and Supplemental Deposition of Waldorf & Associates (R. Doc. 291)**, on Jesuit's motion.  The Court grants expedited review of the matter, and therefore, renders its opinion below.

I.     <u>Background</u>

Jesuit, a parochial high school located in New Orleans, Louisiana, purchased institutional property insurance from Kiln for the period of November 1, 2004 to November 1, 2005 for Jesuit's facilities located (1) on 4133 Banks Street, New Orleans, Louisiana, and (2) in Pass Christian, Mississippi.  (R. Doc. 3.)  Jesuit's properties were damaged on or about August 29, 2005 by the effects of Hurricane Katrina.  (R. Doc. 3.)  Consequently, Jesuit sought to recover insurance proceeds from Kiln.  (R. Doc. 3.)

According to Jesuit, their insurance policy with Kiln contains various provisions relating to flooding, including limits on recovery for flood damage.  (R. Doc. 3.)  However, Jesuit contends that the water damage to its facilities was not caused by flooding and thus not subject to the flood limits in the policy.  (R. Doc. 3.)  Both of the parties dispute the nature and extent of the coverage available. (R. Doc. 3.)  It is from these circumstances which the subject lawsuit arises.

On January 10, 2007, the parties purportedly took the depositions of (1) the corporate entity, Waldorf & Associates, (2) Christopher Waldorf, (3) Bill Waldorf, and (4) Evelyn Nowak (collectively, the "Waldorf brokers") in Ronkonkoma, New York.  (R. Doc. 261-3, Ex. 1.)  Waldorf & Associates acted as Jesuit's U.S. based insurance brokers, and that Christopher Waldorf, Bill Waldorf, and Evelyn Novak were allegedly the principals of Waldorf & Associates.

On January 10, 2008, the corporate deposition of Waldorf & Associates commenced at

2

approximately 12:57 p.m. and concluded at 2:56 p.m.  During the deposition, counsel for Kiln asked whether Christopher Waldorf had Jesuit's 1995 insurance policy at the deposition.  (R. Doc. 264-2, Ex. A, p. 15.)  Christopher Waldorf responded, "I don't, sorry.  I think those documents–do I have some time to get them, because those documents, after three years, we file them away, and I think that is where they are.  Can we provide them–we can get them; I just don't have them here."  (R. Doc. 264-2, Ex. A, p. 15.)   Christopher Waldorf also testified that the older documents were in storage in a container outside of the Waldorf brokers' building.  (R. Doc. 264-2, Ex. A, p. 5.) Kiln then followed up with an inquiry regarding Kiln's coverage in its 1995 policy for flood claim, to which Christopher Waldorf replied:

> A.    We probably have coverage.  I am not so sure about the claim information, because you have no idea how voluminous those claims files get, and we are finding–it's totally unrelated, but we are finding ourselves now having to deal up records from these claims going twenty, thirty years.  It's no small task to find documents that old.
> Q.    Since you kindly offered to see if you can locate them–
> A.    I will.
> Q.    –I would like to ask that we leave the deposition open to allow you the opportunity
> A.    No, all right.
> Q.    Not today, necessarily.  Will you provide us with any of those documents?
> A.    Yes, I will.

(R. Doc. 264-2, Ex. A, p. 4.)

Thereafter, Christopher Waldorf continued his testimony on the additional documents sought by Kiln.  However, he clarified that "[w]e don't have what you would call a placing file.  A policy like Jesuit['s] would have been renewed based on pretty much whatever it was last year, the expiring year.  If there's any additions that took place during the year, these records are always [with] JLT." (R. Doc. 264-2, Ex. A, p. 6.)  Therefore, Kiln asked about the "information, facts and circumstances surrounding a true, certified and complete copy of the Jardine Lloyd Thompson placing file," to

which Christopher Waldorf responded:

> A.     That I will have to get for you.
> Q.     Could you obtain that for us?
> A.     Sure.

(R. Doc. 264-2, Ex. A, p. 7.)  Finally, the following exchange occurred with counsel for Kiln and

Christopher Waldorf, regarding the additional materials sought by Kiln, that were not produced at

the deposition:

> Q.     I think the agreement and the commitment was that you would get the
>         policies as soon as you could, certified copies and if, after looking at the
>         certified copies, if we need any further testimony on them, I don't want to
>         come and take any more of your time, or your testimony if I don't need to,
>         but we had to leave it open because those were requested.
> A.     All right.

(R. Doc. 261-5, p. 4.)  Based on Christopher Waldorf's deposition testimony, counsel for Kiln,

Michael J. Maginnis ("Maginnis") sought the continue the deposition, indicating to Christopher

Waldorf and the other counsel:

> MR. MAGINNIS:     I'm not asking you to come back if we don't need to. . . . But
>                   we have got the whole day set aside, at least if not the rest of
>                   the day, tomorrow, to get these done.  But I don't believe in
>                   taking it longer than we have to.
>
>                   I am just telling you though, by looking at some things now,
>                   you are right, much, if not all of it, has been previously
>                   produced.   But the witnesses has given some testimony
>                   earlier in his individual deposition that has some striking
>                   contrast with some of the documents that I have seen and
>                   things in the documents, and you tell me what you want to
>                   do. . . .  If they can't finish today, let's have an agreement, as
>                   professionals, as gentlemen, we will come back when we
>                   need to, when we can, and do it.  If you don't want to do that,
>                   we can do it the hard way.

 (R. Doc. 264-4, Ex. C, pp. 2-3; Tr. at pp. 45-46.)

        Despite Maginnis's request to continue the deposition, counsel for Jesuit and for the Waldorf

brokers objected to keeping the deposition open.  They maintained that the deposition notice was only sent out to the parties seven days prior to the deposition and requested extensive document production and the majority of the documents were produced.  (R. Doc. 264-2, Ex. A, pp. 4-5.) Additionally, Jesuit objected because all of the depositions were specifically noticed for January 10, 2008, and not for any subsequent days.   (R. Doc. 264-4, Ex. C, pp. 2-3; Tr. at pp. 45-46.)

Thereafter, counsel for Kiln corresponded with counsel for the Waldorf brokers, in an attempt to obtain the remaining documents from Christopher Waldorf before July 8, 2008.  (R. Doc. 264-3, Ex. B.)  On June 24, 2008, Kenneth Krobert, counsel for the Waldorf brokers sent an email to Kiln indicating that "Christopher Waldorf's illness has forced Bill Waldorf to do all of the legwork himself. . . . As he put it, with his Dad out of the office, and with him handing his normal duties plus those of his father, he feels as if he is actually short one and one-half men.  However, he is strongly motivated by the fact that he doesn't want to put his father through another deposition, should that eventuate."  (R. Doc. 264-3, p. 3.)  At the hearing, Kiln maintained that despite repeated correspondence and the promise that the documents would be produced by July 8, 2008, it still had not received any of the promised materials.

On July 3, 2008, Kiln re-noticed the corporate deposition for Waldorf & Associates for July 30, 2008.  (R. Doc. 261-4, Ex. 2.)  However, Kiln did not draft a new deposition notice that indicated the areas where it sought additional information.  Rather, Kiln's notice of deposition restated the identical deposition grounds and topics, merely adding two additional issues within the notice.  For the deposition, Kiln seeks additional documentation from Waldorf & Associates including: (1) Jesuit's policy for a flood occurring in 1995, (2) placement files for the policy at issue, and all subsequent policies, and (3) the settlement agreement entered into by Kiln and Waldorf &

Associates in the matter on January 18, 2008.

Jesuit brings the instant motion to quash the re-noticed corporate deposition of Waldorf & Associates.  Jesuit contends that because Waldorf & Associates has already been deposed twice, the re-noticed deposition is cumulative of prior testimony.  Jesuit emphasizes that Kiln's deposition notice is identical to its original Federal Rule of Civil Procedure ("Rule") 30(b)(6) notice, however, Kiln now requests irrelevant and immaterial documents, including Jesuit's insurance policies for years outside of Hurricane Katrina.  Particularly, Jesuit notes that Kiln seeks Jesuit's insurance policy from 1995, even though Waldorf testified that he first placed coverage in the late 1990s.  (Tr. at p. 9.)  Jesuit also asserts that Kiln seeks documents not in the Waldorf brokers' possession, for they do not retain copies of the insurance policies (Tr. at p. 24), but must first obtain such documents from JLT, which obtains them from Lloyd's signing office, the entity which certifies the policy.  (Tr. at p. 27.)  Jesuit also maintains that the Court placed the recitation of the settlement with Waldorf & Associates under seal, and it is therefore not discoverable.  Additionally, contrary to Kiln's assertions, JLT is not mentioned in the settlement and there is no "Mary Carter" agreement.  Finally, Jesuit stresses that Kiln has not sought leave under Rule 30 to re-depose Waldorf, and therefore, the notice is improper.

In opposition, Kiln contends that it does not seek a second deposition of Waldorf & Associates, but rather, the initial deposition was temporarily recessed so that Christopher Waldorf could produce to Kiln the requested documentation.  Kiln maintains that Christopher Waldorf expressly indicated on the record that he would locate and produce the requested records to complete the corporate deposition.  Kiln maintains that the requested documents are relevant to (1) the placement of coverage, (2) the flood sub-limits, (3) the lack of business interruption coverage, (4)

Waldorf's advice to Jesuit as to the available coverages, (5) the dealings and performance between the parties, (6) Jesuit's knowledge of the coverages before it made proof of its claim and suit against Kiln, (7) Jesuit's alleged mischaracterization of the inundation of its facilities, and (8) the non-renewal of its policy.  Kiln also contends that the settlement agreement is discoverable, not to show the worth of the claim, but to illustrate whether or how (1) the parties released JLT, a non-party from the litigation, (2) Waldorf agreed to assist Jesuit in the case against Kiln, (3) any witnesses' credibility, prejudice, or potential bias is implicated in the settlement agreement, (4) Jesuit characterized its claims in the litigation and its representations to FEMA, (5) the settlement contemplated a "Mary Carter Agreement."  Kiln contends that the information is relevant and material, and it is entitled to continue its deposition, which has been temporarily recessed to gather additional materials. The Court considers the parties' arguments below.

## II.   <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  The Rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c).

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

The Advisory Committee Notes to Rule 30 indicates that leave of court is required when a witness will be deposed in the action more than once. However, a party need not seek leave of court where a deposition is recessed to enable the gathering of additional materials and for the convenience of counsel. Advisory Committee Notes to Fed. R. Civ. P. 30(b)(2)(B), 1993 Amendments.

III.   **Analysis**

    A.   **Continuation of the Deposition**

After reviewing the deposition transcript, the Court concludes that Kiln adequately reserved its right to continue the deposition and that Christopher Waldorf indeed represented that he would

produce the requested documents to Kiln.  However, since that time, extenuating circumstances of Christopher Waldorf's illness made it difficult for him to comply with his promises, and later, his son, Bill Waldorf, indicated that he would provide the materials by July 8, 2008.  Despite assertions to the contrary, Waldorf did not produce the documents.  Kiln verbally represented that it thereafter issued a notice of records only deposition to Waldorf & Associates, however, it did not provide a copy for the Court's review.

Kiln argues that it does not intend to retake another deposition of Waldorf & Associates, but rather, it merely seeks to continue the unfinished aspects of the corporate deposition.  It asserts that it does not need to file for leave to depose Waldorf & Associates, because it has adequately reserved its right to continue the deposition.  Furthermore, Kiln indicates that its counsel, Maginnis, engaged in conversations with the Waldorf brokers, specifically apprising them that he only sought the promised documentation, and had no intention of re-deposing the witness.  The Court notes that strategically and procedurally, the appropriate means for would be to compel the documents, however, the Court nevertheless considers Kiln's arguments here.

In opposition, Jesuit contends that Kiln has not complied with the Rules, which mandate the party seeking a deposition to first obtain court approval before deposing a witness in the action again. Jesuit also maintains that the deposition is cumulative and duplicative, given the earlier depositions of Waldorf & Associates.

After consideration, the Court concludes that Kiln appropriately suspended the deposition. However, the Court invalidates Kiln's notice of deposition because it is substantially identical to its previous notice, other than the addition of two subparts to Exhibits A and B.  (R. Doc. 261-3, Ex. 1; R. Doc. 261-4, Ex. 2.)  Based on Kiln's renewed notice of deposition, is unclear which documents

9

were received and which subject areas that were covered. As written, Kiln's 30(b)(6) deposition notice effectively puts the deponent on notice to re-prepare for all topics covered in the previous deposition, including those topics that have already been adequately addressed by Christopher Waldorf. Therefore, the Court concludes that this deposition notice is deficient, especially in light of the fact that Christopher Waldorf is ill, and therefore, may not be testifying again as the 30(b)(6) deponent. The deponent testifying for Waldorf & Associates should not have to re-prepare for the same deposition inquiries already asked of Christopher Waldorf in the earlier deposition.

In sum, the Court holds that Kiln is entitled to continue the deposition for the limited purpose of completing inquiries into the unfinished areas, however, Kiln must issue a proper notice for the "continuing" deposition parts, specifically delineating the unanswered issues which remain and the documents that are not in Kiln's possession. Based on its requests during the deposition, Kiln may seek Waldorf's placing file, if any,[1] or certified copies of policies, no earlier than 2000,[2] that Waldorf successfully secured from JLT. As written, the currently noticed supplemental deposition would subject the deponent to annoyance, oppression, or undue burden and expense, and therefore, the Court quashes the deposition accordingly.

### B.    Jesuit's Insurance Policy from 1995

Kiln seeks Jesuit's insurance policy from 1995, because it contends that Jesuit made an earlier flood claim in 1995, and the 1995 policy may undermine Jesuit's current attempts to claim water damage from Hurricane Katrina as sewage overflow, as opposed to flooding. Kiln contends

---

[1] Christopher Waldorf indicated that Waldorf did not "have what you would call a placing file. A policy like Jesuit['s] would have been renewed based on pretty much whatever it was last year, the expiring year." (Tr. at p. 58.)

[2] Christopher Waldorf testified, "I am here to answer anything relative, any document issues that are fairly current, going back to 2000, all right. I don't know what it's going to serve if you see a policy that goes back to '94 or '90." (Tr. at p. 47.)

10

that in 1995, Jesuit's properties were flooded by tremendous waters, and under the same policy language as the policy at issue, Jesuit made insurance claims for approximately $300,000.00 and classified the water damage to its premises as due to "flood" and not "sewage backup."

Although the Court ruled on this issue from the bench and compelled the production of the policy, after further consideration, the Court denies Kiln's motion as to this issue.  The Court disagrees with Kiln's suggestion that because Jesuit made another flood claim on a similar policy, that such claims are relevant.  Any flooding or water damage that occurred to Jesuit's facilities in 1995 is distinct from any damage in 2005 because such damage was caused by vastly different natural disasters in two different decades involving entirely different circumstances.  It bears restating that Hurricane Katrina was one of the worst natural disasters in the nation's history and has had catastrophic consequences that have reverberated to today.  Kiln has not sufficiently demonstrated how the terms and conditions of an expired insurance policy from 1995 would be relevant to the subject action, which involves proving facts regarding to the insurance policy in effect during Hurricane Katrina.  Whether the damages to Jesuit's facilities from Hurricane Katrina was caused by flood waters or by sewage overflow is an issue to be determined on the evidence from Hurricane Katrina, not the language of an expired policy from an earlier decade.  Therefore, the Court grants Jesuit's motion to as to the expired policy effective in 1995, because it is of highly attenuated probative value, and therefore, annoying, oppressive, or unduly burdensome or expensive.

### C.   Transcript of Confidential Settlement Agreement

Kiln also seeks the transcript of the settlement agreement between Jesuit and the Waldorf brokers on January 18, 2008, that was read into the record and transcribed by Jodi Simcox, a court reporter for the U.S. District Courts, Eastern District of Louisiana.  Kiln asserts that the settlement

11

agreement will illustrate whether or how (1) the parties released JLT, a non-party from the litigation, (2) Waldorf agreed to assist Jesuit in the case against Kiln, (3) Jesuit characterized its claims in the litigation and its representations to FEMA, and (4) the settlement contemplated a "Mary Carter Agreement." Jesuit opposes Kiln's request, contending that the settlement agreement was placed under seal and that the settlement agreement will prove none of the things alleged by Kiln. Jesuit maintains that the Court may undertake an *in camera* inspection to validate its assertions, rather than requiring it to produce its confidential settlement agreement.

While courts recognize that settlement agreements are inadmissible to prove liability under Fed. R. Evid. 408, courts also firmly adhere to the proposition that "the public interest is better served by permitting discovery of facts . . . despite the private agreements of litigants not to disclose such information." *McKnight v. Stein Mart, Inc.*, Civ. A. 95-0258, 1996 WL 481079, at *1 (E.D. La. Aug. 22, 1996). Although "parties have the freedom to contract, courts must carefully police the circumstances under which legitimate areas of public concern are concealed. [Parties] should not be able to buy the silence of witnesses with a settlement agreement when the facts of one controversy are relevant to another." *Id.* (citations and quotations omitted).

After review of the parties' arguments, the Court concludes that the settlement agreement is discoverable, and therefore, unseals the agreement and subjects it to production here. First, the agreement is not precluded from discovery merely because it was filed under seal. *See Cleveland Const. Inc. v. Whitehouse Hotel Ltd. Partnership*, 2004 WL 385052, at *1 (E.D. La. Feb. 25, 2004) (reasoning that litigants cannot shield a settlement agreement from discovery merely because it was filed under seal). Second, Jesuit did not make a particularized showing of the need for confidentiality of the settlement agreement. *See Marcus v. St. Tammany Parish School Bd.*, Civ. A.

12

95-3140, 1997 WL 313418, at *9 (E.D. La. Jun. 9, 1997) (granting access to the sealed transcript of the settlement proceedings because it was a judicial record and there was no particularized showing of the need for confidentiality).

In reaching its conclusion, the Court finds the persuasive opinion in *Koch Industries, Inc. v. Columbia Gas Transmission Corp.*, Civ. A. 89-2156, 1990 WL 72789 (E.D. La. May 29, 1990) to be instructive here.  In *Koch*, the defendant sought to discover settlement agreements entered into by the plaintiff and other third parties.  *Id*. at *1.  The defendant asserted that settlement agreements would lead to the discovery of admissible evidence and were relevant to its defenses including the mitigation of damages, waiver, and estoppel.  *Id*.  The defendant also contended that the plaintiff gave up his rights at issue in the action because of the settlement.  *Id*.  After analyzing the parties' arguments, the court agreed with the defendant and compelled the plaintiff to produce the settlement agreement, but not the information and the processes leading up to the settlement, which constituted work product.  *Id*. at *2.

The Court grants Kiln's request for the settlement agreement entered into between by the principals and the parties of Jesuit and the Waldorf brokers.  Similar to *Koch*, the Court finds that the information in the settlement may illustrate whether Jesuit settled any rights at issue in this litigation because of its compromise with the Waldorf brokers.  While the Court concludes that Kiln may discover the agreement itself, the Court also concludes that Kiln cannot discover those communications between Waldorf & Associates and Jesuit leading up to the settlement agreement, which may be protected by the work product or attorney-client privilege doctrines.  The Court concludes that the settlement agreement is discoverable, however, the Court makes no ruling as to its admissibility.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED** that the **Motion of Jesuit High School of New Orleans to Quash Supplemental Deposition of Waldorf & Associates Noticed by Kiln Underwriting Limited (R. Doc. 261) is GRANTED IN PART** and **DENIED IN PART**.

**IT IS GRANTED** in that the deposition noticed by Kiln for Wednesday, July 30, 2008 is quashed.

**IT IS FURTHER GRANTED** in that Kiln's deposition is quashed as to its request for Jesuit's insurance policy of 1995.

**IT IS DENIED** in that Kiln may notice and take the continuing Rule 30(b)(6) deposition of Waldorf & Associates, provided that it appropriately re-notices the deposition pursuant to the ruling above.

**IT IS FURTHER DENIED** in that the settlement agreement entered into by Jesuit and the Waldorf brokers on Friday, January 18, 2008, shall be **UNSEALED** and opened to discovery by Kiln.

**IT IS FURTHER ORDERED** that Kiln's **Ex Parte Motion for Expedited Ruling on Jesuit's Motion to Quash Continuation and Supplemental Deposition of Waldorf & Associates (R. Doc. 291)** is **GRANTED**.

New Orleans, Louisiana, this <u>27th</u> day of August 2008

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

14