UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KILN UNDERWRITING LTD., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   06-04350 c/w**<br>            **06-05060**<br>            **06-05057** |
| **JESUIT HIGH SCHOOL OF NEW ORLEANS** | **SECTION: "R" (4)** |

## ORDER

Before the Court is a **Motion to Quash London Depositions Noticed by Kiln Underwriting Limited (R. Doc. 178)**, filed by Jesuit High School of New Orleans ("Jesuit"). Defendant, Kiln Underwriting Limited, ("Kiln") filed a Memorandum in Opposition to Jesuit's Motion to Quash London Depositions Noticed by Kiln Underwriting Limited (R. Doc. 203). The motion was heard on June 11, 2008 with oral argument.

**I.      Background**

This is a declaratory judgment action filed by Kiln regarding an insurance policy issued to Jesuit High School located in New Orleans, Louisiana. (R. Doc. 3). The policy was effective from November 1, 2004 to November 1, 2005 for Jesuit's facilities located: (1) on 4133 Banks Street, New Orleans, Louisiana, and (2) in Pass Christian Mississippi. (R. Doc. 3). The properties were damaged during Hurricane Katrina, and Jesuit made a claim under the policy. (R. Doc. 3).

Consequently, Jesuit sought to recover insurance proceeds from Kiln. (R. Doc. 3). In response to the claim, Kiln filed the subject action. (R. Doc. 3).

According to Jesuit, its insurance policy with Kiln contains various provisions relating to flooding, including limits on recovery for flood damage. (R. Doc. 3). However, Jesuit contends that the water damage to its facilities was not caused by flooding and thus is not subject to the flood limits in the policy. (R. Doc. 3). Both parties dispute the nature and extent of the coverage available. (R. Doc. 3).

During the course of the litigation, a dispute arose regarding whether the policy at issue actually provided for business interruption coverage. (R. Doc. 178-2; R. Doc. 183; R. Doc. 226). While Kiln originally brought this declaratory action and pled in its Complaint that it issued a policy which provided "business interruption coverage," it has since sought to retract that allegation and now suggests that Jesuit is aware of the fact that there is and never was any business interruption coverage. (R. Doc. 203. *See also* R. Doc. 148-2, p. 3; R. Doc. 226). As a result, Kiln has sought to establish through different forms of discovery whether Jesuit ever requested business interruption coverage. (R. Doc. 203, p. 8). Kiln maintains that business interruption coverage is typically not provided for not-for profit institutions like Jesuit High School. (R. Doc. 226, p. 14).

Kiln noticed the depositions of the London broker, JLT Risk Solutions Limited ("JLT") and Jardine Lloyd Thompson and two of its employees, Kevin Andrews and Nick Philpot, seeking to obtain the underwriting/placement files as well as communications between Jesuit and Jardine Lloyd Thompson. (R. Doc. 178-3). Jesuit filed the subject motion, contending that while Kiln seeks to obtain the original placement files, the files are not relevant because the policy that was issued is the "best evidence" of its terms and conditions. (R. Doc. 178-2, p. 2). Kiln opposes the motion and

wishes to proceed with the depositions in London. (R. Docs. 203 and 234).

## II.     Scope of Discovery

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Rule 30 governs the taking of depositions and permits a party to "take the testimony of any person, including a party, by deposition upon oral examination." FED. R. CIV. P. 30. Depositions play "a vital role in the preparation for trial." *Dollar v. Long Mfg., N.C.*, Inc., 561 F.2d 613, 616 (5th Cir. 1977). Furthermore, courts regard oral depositions as a means preferable to written interrogatories of obtaining discoverable information. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 n. 2 (2d Cir. 2003). Under Rule 30, "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." FED. R. CIV. P. 30(b)(1).

However, under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity

to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(c). In assessing whether the burden of the discovery and outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

### III.   Analysis

Jesuit argues that the corporate deposition of JLT and the individual depositions of Kevin Andrews and Nick Philpot scheduled for June 23 and 24, 2008 should be quashed, because any information the depositions will provide is irrelevant. (R. Doc. 178-2, p. 2). Jesuit asserts that it has already provided thousands of pages in response to Kiln's request. (R. Doc. 178-2, p. 2). It further suggests that the notice is "nothing more than a weak attempt" to demonstrate that the words in the policy do not mean what the policy says. (R. Doc. 178-2, p. 2). Jesuit points out that Kiln remitted a $250,000 advance to its state side broker, Waldorf and Associates, and that a letter written by its broker indicated that the payment constituted an advance on the *expenses* incurred as a result of Hurricane Katrina. (R. Doc. 178-2, p. 2) (emphasis added).

Kiln contends that its properly scheduled depositions should not be quashed, because the depositions seek to discover information and evidence which is not available from any other source or party in this lawsuit. (R. Doc. 203, p. 2). It contends that the information it seeks is crucial to the fact finding and matters at issue in this lawsuit. (R. Doc. 203, p.2). Kiln advances several grounds for why the Court should deny the motion to quash. (*See generally* R. Doc. 203). Most notably, it contends that: (1) Jesuit has failed to assert a legitimate ground for quashing the depositions; and (2) the records and testimony are relevant and discoverable.

"Relevancy is broadly construed and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence." *Estate of Monroe v. Bottle Rock Power Corp.* No. Civ.A. 03-2682, 2005 WL 119883, at *4 (E.D.La. Jan. 19, 2005) (citing *Garcel, Inc. v. Hibernia Nat'l Bank,* No. Civ.A. 07-0772, 2002 WL 100605 (E.D.La. Jan. 24, 2002)). Generally, "[a] party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence." *Audiotext Commc'ns Network, Inc. v. United States*, No. 94-23950-GTV, 1995 WL 625962, at *3 (D.Kan.1995). "When the discovery sought appears relevant, [t]he party resisting discovery bears the burden of establishing lack of relevance" *Id*. It generally does so "by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1) or is of such marginal relevance that the potential harm ... would outweigh the ordinary presumption in favor of broad disclosure." *Id*.

To avoid the requested discovery, Jesuit relies only upon its alleged irrelevancy. (R. Doc. 178-2, p.2). Jesuit does not suggest that the discovery seeks privileged information. Moreover, it does not object that the discovery is unreasonably cumulative or duplicative or that there is a more convenient or less burdensome or expensive source than itself. The Court will, nevertheless, address the objection in due course.

The notice at issue seeks to ask JLT about several topics, namely:

1. The entire placement file, including documents exchanged between JLT, the Wilson group, Waldorf and Associates, and Jesuit when Jesuit requested the opportunity to purchase and place coverage

2. Any matter in litigation, including coverage and limits for the policy term of 2004 to 2005

3. Correspondence and exchanges of information between JLT, the Wilson Group, and anyone else regarding claims presented by Jesuit for damages to the school over the course of five policy years

4. Correspondence and other documents relating to the reduction in flood sub-limits for the policy year 2004-2005

5. All documents and materials received by JLT or sent by JLT from the Lloyd's Policy Signing Office and Lloyd's Claims office relating in any way to the subject litigation; and

6. A complete copy of the claims file for the claim brought by Jesuit High School.

The Court is of the opinion that a significant issue has developed regarding the existence of business interruption coverage. While the policy at issue appears to be a standard policy, the Schedule of Sub-Limits– Section A indicates that business interruption, including payroll insurance, was not included. (R. Doc. 183-3, p. 3). A footnote to the Schedule explicitly states that "the word 'Included' where used above shall be deemed to read 'Included up to the full limits of liability.'" (R. Doc. 183-3, p.3). Yet, at some point Kiln seemingly believed that it provided business interruption coverage and made such an assertion in its intial Complaint. (R. Doc. 1). Therefore, whether Jesuit sought to purchase and paid a premium for business interruption coverage is relevant to the claims involved here.

The Court notes that each of the other categories set forth in Kiln's Notice of Deposition of JLT, with the exception of the category regarding the prior history of insurance claims, all seemingly revolve around the issue of the Schedule of Sub-Limits and the scope of coverage purchased by Jesuit prior to Hurricane Katrina. (*See* R. Doc. 178-3). The Court is of the opinion that Jesuit's prior claims between the years 1994 and 1995 are not relevant to its instant claim, which pertains to damages resulting from Hurricane Katrina. (*See* R. Doc. 178-3, p. 5, para. 3). Likewise, whether

Jesuit previously submitted a claim for damages allegedly caused by back-sewers is also irrelevant. (*See* R. Doc. 178-3, p. 4, para. D). Accordingly, the Court modifies the scope of the Notice of Deposition to the extent that Kiln sought to question JLT and its employees about claims within these two categories. The Court therefore concludes that Kiln's requests pertaining to Jesuit's damage claims between 1994 and 1995 and its inquiries regarding Jesuit's previous claims regarding back-up sewage exceed the scope of discovery and thus are not permitted.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Jesuit's **Motion of Jesuit High School of New Orleans to Quash London Depositions Noticed by Kiln Underwriting Limited (R. Doc. 178)** is **GRANTED IN PART** and **DENIED IN PART**.

> **IT IS GRANTED** only to the extent that Kiln sought to question JLT and employees about Jesuit's prior claim history regarding back-up sewerage and damage claims between 1994 and 1995. Such inquiries are not permitted.
>
> **IT IS DENIED** in all other respects.

The depositions shall proceed in London in accordance with the order set forth above.

New Orleans, Louisiana, this 18th day of September 2008

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**